# APPENDIX  A

|  |  |
|---|---|
| 5K1.1/Rule 35(b) | ___ |
| Appeal Waiver | ___ |
| Mandatory Minimum | __X__ |
| Other | ___ |
| DOJ Approval | __X__ |

# UNITED STATES DISTRICT COURT FOR THE

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 403-01 |
| | ) | |
| MEIER JASON BROWN | ) | |

## SUMMARY OF (CONDITIONAL) PLEA AGREEMENT

*This summary of the plea agreement is a part of the agreement,
which follows in full hereafter.*

**COUNSEL FOR THE PARTIES:**

DEFENSE COUNSEL:          WILLIAM G. BELL, ESQ.
                         RICHARD A. DARDEN, ESQ.

ASSISTANT U.S. ATTORNEYS:    WILLIAM FRENTZEN
                             JOSEPH D. NEWMAN

**COUNTS AND STATUTES CHARGED:**

COUNT 1                18 U.S.C. § 1111
                       MURDER

COUNT 2:               18 U.S.C. § 1114
                       MURDER

COUNT 3:               18 U.S.C. § 2114
                       ROBBERY

MB

## COUNTS AND STATUTES PLEADING TO:

| | |
|---|---|
| COUNT 1 | 18 U.S.C. § 1111<br>MURDER |
| COUNT 2: | 18 U.S.C. § 1114<br>MURDER |
| COUNT 3: | 18 U.S.C. § 2114<br>ROBBERY |

## STATUTORY MAXIMUM PENALTIES:

### 18 U.S.C. § 1111

Death or imprisonment for life, a $250,000 fine, and up to five (5) years of supervised release, plus a $100.00 assessment.

### 18 U.S.C. § 1114

Death or imprisonment for life, a $250,000 fine, and up to five (5) years of supervised release, plus a $100.00 assessment.

### 18 U.S.C. § 2114

Imprisonment not more than 25 years, a $250,000 fine, and up to five (5) years of supervised release, plus a $100.00 assessment.

## ELEMENTS OF THE OFFENSE

### 18 U.S.C. 1111 (*Murder within federal Jurisdiction*)

First: That the victim named in the indictment is dead;

Second: That the Defendant caused the death of the victim with "malice aforethought," as charged;

Third: That the Defendant did so while during the knowing and willful perpetration or attempted perpetration of a robbery; and

2

Fourth:    That the killing occurred within the territorial jurisdiction of the United States.

**18 U.S.C. 1114**    *(Murder of Federal Employee)*

First:    That the victim named in the indictment is dead;

Second:    That the victim was an employee of the United States and of the United States Postal Service;

Third:    That the victim was engaged in the performance of her official duties; and

Fourth:    That the Defendant killed the victim during a knowing and wilful perpetration or attempted perpetration of a robbery of the United States Postal Service.

**18 U.S.C. 2114**    *(Robbery of Federal Property)*

First:    That the Defendant intentionally took from the person or the presence of the person described in the indictment, money and property of the United States;

Second    That the Defendant assaulted and put in jeopardy the life of some person by the use of a dangerous weapon or device while engaged in taking the property or money, as charged; and

Third:    That the defendant did such acts intentionally.

3

MB

## SUMMARY OF GOVERNMENT'S PROMISES:

- Will submit this agreement to the Department of Justice and Attorney General for review and approval of its terms, including that the government waive intent to seek death sentence in light of plea agreement and defendant's agreement to enter guilty pleas.

- Represents that a life sentence is the appropriate sentence on Counts One and Two.

- Retains the right to inform the Court of all matters concerning the defendant and the offenses.

## SUMMARY OF DEFENDANT'S PROMISES:

- Will plead guilty to Counts One through Three following approval from Department of Justice for waiver of death sentence.

- Acknowledges that a life sentence on Counts One and Two is the appropriate sentence.

2



UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 403-01 |
| | ) | |
| MEIER JASON BROWN | ) | |

## (CONDITIONAL) PLEA AGREEMENT

William Frentzen and Joseph D. Newman, Assistant United States Attorneys, and William G. Bell and Richard A. Darden, attorneys for Defendant Meier Jason Brown, pursuant to Federal Rules of Criminal Procedure 11, as amended, have, with the authorization of the undersigned defendant, heretofore entered into discussions with a view towards reaching a pretrial conclusion of the charges pending in the above-styled action and a plea agreement has been reached by said parties in the following respects:

1.    **OBLIGATIONS OF THE GOVERNMENT**

In exchange for the defendant's entry of pleas of guilty to the offenses charged in Counts One through Three of the Indictment, his full compliance with all promises made hereinafter as part of this agreement, and his adherence to all representations and understandings recited hereinafter, the United States Attorney's Office for the Southern District of Georgia:

A.    Will submit this agreement to the Department of Justice and the Attorney General of the United States for review and approval of its terms, including



the proposal that the government waive seeking a death sentence in light of this plea agreement and Defendant's agreement to enter guilty pleas. The Defendant understands that the United States Attorney's Office for the Southern District of Georgia cannot bind the Department of Justice's ultimate decision regarding whether to seek the death penalty in this case and that, if the Department of Justice authorizes seeking a death sentence and rejects the plea agreement, this agreement would become a nullity.

B.    Following any approval of this agreement by the Attorney General, would represent that a life sentence is the appropriate sentence on Counts 1 and 2.

C.    Retains the right to inform the Court of all matters concerning the defendant and the offenses.

## 2.    OBLIGATIONS OF THE DEFENDANT

A.    The Defendant is required to plead guilty to Counts One through Three of the Indictment and to pay any special assessments, fines, and restitution as provided by law and ordered by the Court. If, however, the Department of Justice and Attorney General authorize seeking a death sentence and do not waive seeking such a sentence in light of the plea agreement, then this agreement would become a nullity and Defendant would not be required to enter guilty pleas.

B.    The defendant is required to pay any special assessments imposed pursuant to 18 U.S.C. § 3013 by the Court at sentencing must be paid on the date of

2

MB

sentencing. The defendant agrees that if a fine and/or restitution is imposed by the Court, the defendant shall meet with a member of the Debt Collection Unit of the United States Attorney's Office and complete a written personal financial statement setting forth the defendant's assets and liabilities as of the date of the offense. The defendant understands that, by completing the financial statement, the defendant is representing that it is true and accurate to the best of the defendant's information, knowledge, and belief.

C.    **SPECIAL PROVISION**

THE DEFENDANT ACKNOWLEDGES AND UNDERSTANDS:

That this agreement is contingent upon the United States Attorney's Office obtaining the Attorney General's approval of the agreement. That the United States Attorney's Office is required to submit a DEATH PENALTY MEMORANDUM to the Department of Justice, and that the decision whether to seek a death sentence rests exclusively with the Attorney General of the United States. Should the Attorney General decide to reject the plea offer and seek a death sentence, then this agreement would be null and void.

3.    **DEFENDANT'S FACTUAL REPRESENTATIONS TO THE COURT**

A.    The defendant understands that the Indictment charges that he committed certain offenses against the United States and that his pleas of guilty will constitute proof as to the counts covered hereunder. The defendant agrees to the truthfulness and accuracy of the following facts which relate to Counts One through Three of the Indictment:

**COUNT ONE (18 U.S.C. § 1111, Murder within Federal Jurisdiction)**

3

MB

On or about November 30, 2002, in Liberty County, within the Southern District of Georgia, in the United States Post Office, Fleming, Georgia, a place within the special territorial jurisdiction of the United States, the defendant Meier Jason Brown with malice aforethought, did unlawfully kill Sallie Louise Gaglia by stabbing, in the knowing and willful perpetration of a robbery of said Post Office, all done in violation of Title 18, United States Code, Sections 7(3) and 1111 (a) and (b).

**COUNT TWO (18 U.S.C. § 1114, Murder of Federal Employee)**

On or about November 30, 2002, in Liberty County, within the Southern District of Georgia, the defendant Meier Jason Brown with malice aforethought, did unlawfully kill Sallie Louise Gaglia, United States Postal Service Postmaster Relief, an employee of the United States and of the United States Postal Service, while she was engaged in the performance of her official duties, by stabbing, in the knowing and willful perpetration of a robbery of the United States Post Office, Fleming, Georgia, all done in violation of Title 18, United States Code, Sections 1114 and 1111(a).

**COUNT THREE (18 U.S.C. § 2114, Robbery of Federal Property)**

On or about November 30, 2002, in Liberty County, within the Southern District of Georgia, the defendant, Meier Jason Brown, knowingly and willfully, did assault United States Postmaster Relief Sallie Louise Gaglia, a person having lawful charge, custody and control of United States mail matter, money, and other property of the United States, with intent to rob,

4

steal and purloin money and property of the United States, that is, three United States Postal Money Orders in the amounts of $500, $500, and $175, and in effecting such robbery did wound Ms. Sallie Louise Gaglia, and did place in jeopardy the life of Ms. Sallie Louise Gaglia through the use of a dangerous weapon, that is, a knife, all done in violation of Title 18, United States Code, Section 2114(a).

B.   The defendant understands that the Court is not a party to this agreement, that the government can only make recommendations which are not binding on the Court, and that after the entry of the defendant's guilty pleas, the defendant has no absolute right to withdraw the pleas.  Thus, the Court is free to impose any sentence authorized by law up to the statutory maximum sentences: life imprisonment.

C.  The defendant further advises the Court that the defendant understands that the United States Probation Office will prepare a presentence investigation report for the Court and that, in so-doing, the Probation Office will consider all of defendant's conduct related to the offense to which he is pleading as well as the defendant's criminal history, and that these facts will be considered by the Court in determining the defendant's sentence.  The defendant understands that the offense level and criminal history category determined by the Probation Office and the Court may differ from that estimated or projected by the defendant's counsel or the United States Attorney.

D.    The defendant advises the Court that the defendant understands that if the relevant conduct, guideline sentencing range, or sentence imposed by the Court is more or greater than the defendant expected or, in the case of relevant conduct, is found to be

more extensive than the defendant has admitted to, the defendant will still have no absolute right to withdraw his guilty pleas.

## 5. DEFENDANT'S FURTHER REPRESENTATIONS TO THE COURT

A. The defendant represents to the Court that the defendant has had the services of attorneys the defendant believes to be competent; that the defendant has met with said attorneys on a sufficient number of occasions and for a sufficient period of time to discuss the defendant's case and receive advice; that the defendant has been truthful with his attorneys and related all information of which the defendant is aware pertaining to the case; that the defendant and defendant's attorneys have discussed possible defenses, if any, to the charge in the Indictment, including the existence of any exculpatory or favorable evidence or witnesses, discussed the defendant's right to a public trial by jury or by the Court, the right to the assistance of counsel throughout the proceedings, the right to call witnesses in the defendant's behalf and compel their attendance at trial by subpoenas, the right to confront and cross-examine the government's witnesses, the defendant's right to testify in the defendant's own behalf or to remain silent and have no adverse inferences drawn from the defendant's silence; and that the defendant, with the advice of counsel, has weighed the relative benefits of a trial by jury or by the Court versus a plea of guilty pursuant to this agreement, and has entered this agreement as a matter of the defendant's free and voluntary choice and not as a result of pressure or intimidation by any person.

B.   The defendant further represents to the Court that the plea agreement as set forth herein and the pleas to be entered by the defendant is the result of prior discussions between the attorneys for the government and the attorneys for the defendant, conducted with the defendant's authorization, knowledge and consent; that this plea agreement contains the entire agreement and understanding between the government and the defendant; and that the defendant has no other agreements, understandings, or deals with any person other than those set out in this plea agreement, that is, the defendant advises the Court that the defendant's entire understanding of this plea agreement is completely set forth in writing in this document.

C.   The defendant represents to the Court that the defendant has been advised of the nature of the charges to which the pleas of guilty is to be offered, of the maximum possible penalty provided by law, as set forth above, and that by entering pleas of guilty the defendant gives up all of the rights set out in paragraph "A" above, gives up any defenses to the charges, and understands that there will not be a further trial of any kind. The defendant further understands that in entering pleas of guilty, the Court will ask questions about the offenses to which the pleas are entered. The defendant understands that the defendant will be under oath and on the record in answering those questions, and that the defendant's answers may later be used against the defendant in a criminal prosecution for perjury or false statement if those answers are not truthful.

7

This _24th_ day of _January_, 2003.

RICHARD S. THOMPSON
UNITED STATES ATTORNEY

William Frentzen
Assistant United States Attorney
Louisiana Bar No. 24421

Joseph D. Newman
Assistant United States Attorney
Chief, Criminal Section
Georgia Bar No. 541150

_1-24-03_
Date

William G. Bell
Attorney for the Defendant

_1-24-03_
Date

Richard A. Darden
Attorney for the Defendant

I have read the foregoing plea agreement, consisting of nine pages, and understand what it says and means. By my signature hereunder, I swear or affirm under penalty of perjury that the matters and facts set forth therein are true and accurately state the representations that have been made to me my by attorneys and government agents and/or prosecutors and accurately set forth the terms of the plea agreement that has been reached by my

attorneys on my behalf and with my permission.  I hereby freely and voluntarily enter into

this plea agreement.

MEIER JASON BROWN
Defendant

01-24-03
Date

9

# APPENDIX  B



COUNTY OF CHATHAM

STATE OF GEORGIA

### AFFIDAVIT OF BRUCE LITTLE

Comes now Bruce Little, before the undersigned officer duly licensed to administer oaths, and swears or affirms as follows:

1. My name is Bruce Little and I am over the age of eighteen. The information contained in this affidavit is based on my personal knowledge and I am competent to testify to the matters herein.

2. In 2004, I was selected as a juror in the federal death penalty case against Meier Jason Brown. I was then chosen as the foreman. We deliberated very hard in the guilt phase of the trial and I was particularly effected by the surveillance photos of Mr. Brown and his girlfriend cashing the money orders from the post office. I also recall that some of the jurors were really influenced by the crime scene photos which were very graphic and

1



gory.  Ultimately, we decided that the Government had proven its case.

3.  After we found Mr. Brown guilty we went on to the penalty phase of the trial.  Almost the first thing we heard from the defense was that Mr. Brown had agreed to plead guilty in exchange for a sentence of life without parole.   It was our understanding from the stipulation the defense read that Mr. Brown offered to plead guilty only after the case went to the jury and we were deliberating whether he was guilty.  A number of us were angered by the fact that Mr. Brown only offered to plead after he had heard the evidence against him.

4.  I have been advised that the jurors were mistaken about Mr. Brown offering to plead only after all of the evidence was presented during the guilt proceeding.   Representatives of Mr. Brown have informed me that Mr. Brown actually offered to plead guilty well before the trial began.  That was never made clear to us and had we known that it would have had a considerable impact on

2



my decision to sentence Mr. Brown to death. This is so because by offering to plead guilty early on, Mr. Brown demonstrated his willingness to accept responsibility for what he had done and would have shown me that he was remorseful for his actions.

5. I thought that we, as the jury in this case, had been given all relevant information. I recall there were no psychiatrists or psychologists who testified for either side. I believed from what we were presented that Mr. Brown was a bad guy and would likely continue to be. I would have been receptive to any other information but none was presented.

6. I have been advised that Mr. Brown was evaluated by doctors at a federal medical center. I am told that the experts at this federal prison administered psychological tests to Mr. Brown and that these tests and experts found that Mr. Brown was not anti-social, was not a psychopath, and was classified as requiring low security measures within a prison system. Had the Government or the defense presented such evidence that Mr. Brown did not fit

3



the profile of a person who would be dangerous in the future, I most likely would have not voted to impose a death sentence.

7. I remember Detective Woodall testifying and I recall he appeared to have a good relationship with Mr. Brown. All Det. Woodall testified to was that he believed Mr. Brown was remorseful for his crime. I would have been impressed and influenced in my decision-making if I had been made more fully aware that Detective Woodall, a seasoned police officer, believed that Mr. Brown did not go into this crime with the intention of killing Ms. Gaglia. I most likely would have voted for a life sentence if I had been aware that Detective Woodall did not believe Mr. Brown should be sentenced to death and the reasons why.

7. During the sentencing deliberations the jurors talked a good deal about what the family of Sally Gaglia would have wanted us to do. There were some of her family who testified about their loss. They never said if they wanted Mr. Brown to be sentenced to death, but they were testifying for the Government at the penalty

4



phase of the trial so we assumed they wanted a death sentence. If we had been told that Ms. Gaglia's husband and other family members had agreed to allow Mr. Brown to plead guilty in exchange for being sentenced to life without parole it would have had a significant impact on my decision on whether to impose a death sentence. I do not think I would have.

8. On top of the fact that we mistakenly believed Mr. Brown only offered to plead guilty during the trial, we were never informed that the Government had agreed to allow him to plead guilty and receive a life sentence. We were under the impression that even though Mr. Brown offered to plead guilty, the Government never thought that life without parole was an appropriate sentence.

We believed that Mr. Brown offered to plead guilty and that the lawyers for the Government rejected the offer because they believed life without parole was not an appropriate sentence. If I had been made aware that the local United States Attorneys who were prosecuting the case had actually signed an agreement allowing Mr.

5



Brown to be sentenced to life without parole if the Attorney General of the United States approved, that would have impacted my decision to impose a death sentence and I likely would not have done so. A large part of my decision to impose a death sentence was based on what we thought was in the minds of the family. I most likely would have voted for life without parole if I had known that the local Government prosecutors and the victim's family believed that life in prison without parole was an adequate sentence.

9.    I have read every part of this affidavit and have initialed each page. Everything in this affidavit is true and correct and I have not been told what to say or how to say it. I voluntarily agreed to meet and speak with Mr. Brown's representatives and I have not been promised anything in exchange for giving this affidavit.

Further affiant sayeth naught.

Dated, this the ___17th___ day of January, 2008.

6

_____

BRUCE LITTLE

Sworn to me this the 17th
day of January, 2008.

_____

NOTARY PUBLIC

My commission expires: Nov 16 2009



7

# APPENDIX C

# DONALDSON & BELL

An Association of Professional Corporations
420 West Broughton Street
Savannah, Georgia 31401

R. B. Donaldson, Jr.
William G. Bell, III (Ga & Fl)*
Jeffrey C. Donaldson

Tel: (912) 233-8000
Fax: (912) 234-0103

Donaldson & Donaldson, P.C.

William G. Bell, III, P.C.
wgbatty@hotmail.com

January 24, 2003

Honorable John Ashcroft
Attorney General of the United States
Department of Justice
10th & Constitution Avenue, N.W.
Washington, D.C. 20001

"CONFIDENTIAL"

Re:  United States v. Meier Jason Brown, (S.D.Ga CR403-1)

Dear Attorney General Ashcroft:

This letter constitutes the written submission of counsel for Meier Jason Brown, pursuant to Department of Justice Protocol under USAM 9-10.000. We have not yet been scheduled to meet with the Attorney General's Review Committee at the Department of Justice, but intend on making an in person presentation should the Department of Justice initially decline to proceed with the written plea agreement for a sentence of life without possibility of parole attached hereto as Exhibit "A". By this letter, we respectfully request that you not seek the death penalty against Mr. Brown. We submit to you a proposed plea agreement wherein Mr. Brown has agreed in writing to plead guilty to the crimes charged resulting in a sentence of life without possibility of parole. This letter addresses the principal reasons why this is not one of those cases where you should authorize the United States to seek the death penalty. The death penalty protocols of the Department of Justice contemplate that the death penalty will be authorized by the Attorney General of the United States only in the most aggravated capital cases against the most dangerous, capital defendants. This is not such a case.

Notwithstanding the attached plea agreement, nothing in this letter should in any respect be considered an authorized admission by counsel on behalf of Mr. Brown. This letter is intended to be in the nature of communications between counsel for Mr. Brown and counsel for the government for the purpose of resolving and disposing disputed issues and, therefore, is covered by the protections of Rule 11 (e) (6) of the Federal Rules of Criminal Procedure and Rule 408 of the Federal Rules of Evidence.

1.  **THE FACTS AND CIRCUMSTANCES REGARDING THE INSTANT CHARGES AGAINST MEIER JASON BROWN**

A.    **The Charges**

Pursuant to the Indictment filed in this case, Mr. Brown is charged with:

a.    Count 1 – Murder within Federal Jurisdiction in violation of 18 U.S.C. § 1111;

b.    Count 2 – Murder of Federal Employee in violation of 18 U.S.C. § 1114;

c.    Count 3 – Robbery of Federal Property in violation of 18 U.S.C. § 2114.

The penalty for Counts One and Two is death or imprisonment for life plus a statutory fine and assessment. The penalty for Count three is not more than twenty-five (25) years imprisonment, up to Five (5) years of supervised release plus a statutory fine and assessment.

B.    **A Summary of the Circumstances of the Homicide and the following investigation**

On November 30, 2002 the United States Post Office in Fleming, Georgia was robbed and in the course of the robbery Postmaster Relief Sallie Louise Gaglia was murdered by multiple stab wounds inflicted by a knife. In the days following the homicide Mr. Brown became a person of interest in the investigation based on information provided by a rural postal carrier who had been at the Fleming Post Office prior to the robbery/murder and who had seen Mr. Brown picking up mail from a family mailbox, and based on information provided by witnesses including at least one confidential informant.

On December 5, 2002 authorities executed search warrants simultaneously at the residence of Mr. Brown's mother (his primary residence) and at the home of Mr. Brown's girlfriend.

Mr. Brown was present during the search executed at the residence of his girlfriend. Mr. Brown offered no resistance and voluntarily remained at the scene. According to evidence introduced at the detention hearing, during the lengthy search of the girlfriend's residence, Mr. Brown agreed to answer questions and after initial denials, cooperated and confessed to authorities that he had in fact committed the crimes set forth in the indictment. The evidence further showed, Mr. Brown, clearly evidencing remorse, apologized and made an admission to his girlfriend while still at the residence. Authorities placed a call to Mr. Brown's mother at Mr. Brown's request and Mr. Brown made a brief tearful confession to his mother before he was taken from his girlfriend's residence.

2

The morning following his arrest Mr. Brown continued his cooperation by providing a tape-recorded statement to authorities at the Liberty County Jail. Mr. Brown cried openly while providing the taped statement to the officers.

## 2.  MEIER JASON BROWN'S ACCEPTANCE OF RESPONSIBILITY

As outlined above Mr. Brown cooperated with authorities and provided a string of confessions during his first encounter with the police – confessing directly to authorities, to his girlfriend in the presence of the authorities, and then to his mother by telephone in the presence of authorities.

Mr. Brown continued his cooperation the next day by waiving his right to remain silent and his right to counsel and, after being advised of his Miranda rights he gave a tape-recorded statement to authorities admitting the acts charged in the instant Indictment. As noted above, it is clear from his demeanor that he was remorseful during the cooperation process.

On January 10, 2003 a meeting was held between counsel for Mr. Brown and representatives of the United States Attorney's Office for the Southern District of Georgia. Present for the Government were United State Attorney Richard Thompson, and Assistant United States Attorneys William Frentzen, Joseph Newman, and Fredrick Kramer. Counsel for Mr. Brown advised the attorneys for the Government that their client had directed and authorized them to continue with his earlier acts of accepting responsibility by offering to plead guilty as soon as possible for life without possibility of parole. Counsel for Mr. Brown stated that Mr. Brown was willing to sign a written plea agreement to be forwarded to Washington for DOJ review along with this letter and the Government's submission.

## 3.  MEIER JASON BROWN'S BACKGROUND

USAM 9-10.000(G) requires the Attorney General, the Attorney General's Committee and the United States Attorney involved to consider in deciding whether or not to authorize a death penalty prosecution "any mitigating factor reasonably raised by the evidence." Moreover, in conducting this analysis any evidence of such mitigating factors "should be considered in the light most favorable to the defendant" and the weighing of aggravating factors against mitigating factors "should be qualitative, not quantitative."

In performing this weighing analysis, facts regarding the defendant's background, character and record should always be considered. Because of the enormity and irrevocability of the death penalty, making it "qualitatively different from a sentence of imprisonment, however long", in determining whether to seek this penalty the defendant should be judged as a "uniquely individual human being" and all "relevant facets of the character and record of the individual offender (and) the circumstances of the particular offense," should be considered. Woodson v. North Carolina, 428 U.S. 280, 304-305 (1976). A capital punishment process must be "at once consistent and principled but also humane and sensible to the uniqueness of the individual." Eddings v. Oklahoma, 455 U.S. 104, 110 (1982). It is

3

only then that there can be assurance that the decision to seek the death penalty reflects "a reasoned moral response to the defendant's background, character and crime." California v. Brown, 479 U.S. 538, 545 (1987) (O'Connor, J. concurring) (emphasis in original).

Mr. Brown's background weighs heavily against the decision to seek the death penalty against him.

Mr. Brown is thirty-two (32) years old. In appearance Mr. Brown is shorter than average height and slight. He grew up and has lived most of his life with his mother, Sadie Brown. Mr. Brown and his mother live with other family members in a dilapidated trailer located on a parcel of land once owned by Sadie Brown's parents. The poor condition inside Sadie's trailer is striking even for an economically struggling family in a rural part of Liberty County. Located on either side of Sadie Brown' trailer are trailers owned by one of Mr. Brown's Uncles and one of his Aunts respectively. At any given time a number of Mr. Brown's immediate and large extended family (Mr. Brown has 11 living Aunts and Uncles and approximately 100 cousins) occupy the various trailers.

Sadie Brown has been in poor health for years and has relied heavily upon Mr. Brown, and one of his brothers, to care for her. Sadie is wheelchair bound and suffers from a number of illnesses. Diabetes has left her blind in one (1) eye and led to the amputation of her right leg. She is a dialysis patient and has to be driven to Savannah by her sons for treatment. Mr. Brown's father left he and his mother when Mr. Brown was approximately 2½ years old. Mr. Brown's father continued to live in the area after he left the family and when he was ten years old Mr. Brown witnessed his father shoot his oldest brother with a hand gun. This was just one of many acts of violence Mr. Brown was exposed to while growing up. Mr. Brown and his father have never had a meaningful relationship.

Mr. Brown is one (1) of eight (8) children; seven (7) brothers born to his mother and one (1) sister born to his father. All of his brothers have different fathers with the exception of his twin brothers Leo and Levi. Mr. Brown's family life and upbringing was chaotic and dysfunctional to the point that he has no idea whom the fathers of his brothers are. Mr. Brown does not know if his brothers have any idea who their fathers are.

Mr. Brown dropped out of high school to go to work in order to help his mother. His employment history consists of working as a city garbage collector, various fast food restaurant jobs and maintenance work. Mr. Brown did well in a work environment.

Mr. Brown's oldest brother, Roy Morgan, (Morgan is Sadie's Brown's maiden name) lives next to his mother's trailer where he is cared for by one of Mr. Brown's aunts. Roy suffers from heart and kidney disease and has little or no use of his right arm due to a stroke. Leo Morgan lives at home with Mr. Brown and their mother and does construction work. Levi Morgan also lives with Sadie and is the only high school graduate in the immediate family. Levi Morgan does maintenance work. Carlton Morgan lives in Atlanta Georgia and does maintenance work. Glen Morgan does not live with the family and the youngest brother, Nita Morgan, worked in maintenance prior to his death four years ago from a protracted

4

illness. Mr. Brown's only sister, Beverly, is married and lives with her family. Mr. Brown's remaining family consists of his aunts and uncles and numerous cousins.

Mr. Brown's criminal record includes convictions for driving violations, forgery charges, theft by taking auto, and a 1996 robbery charge that did not involve the use of a weapon or physical injury to the victim. The only charges resulting in imprisonment other than minor jail time for the driving violations were the auto theft and robbery charges for which Mr. Brown received concurrent sentences. Mr. Brown was sentenced to five (5) years imprisonment for the robbery and four (4) years for the auto theft.

Mr. Brown's record as an inmate will show that he adapted well to life in prison and will pose no risk of future dangerousness to others as a federal prisoner. Mr. Brown was given and kept a job in the State Prison System with responsibility and little supervision evidencing his good behavior and his ability to be trusted not to pose a risk of flight or danger to others in a prison setting.

### 4.   THIS IS NOT A HIGHLY AGGRAVATED CASE

While fully and unequivocally acknowledging the seriousness of the government's allegations, we respectfully submit that this case is not as highly aggravated as other crimes that have been selected by the Attorney General for a capital prosecution. It involves a single homicide committed by an individual who subsequently cooperated with authorities and clearly expressed remorse.

### 5.   PRESENCE OF MITIGATING FACTORS

### 18 U.S.C. § 3592(a)

Under 18 U.S.C. § 3592(a), in determining whether a sentence of death is to be imposed on a defendant, the jury must consider any mitigating factor.

Under 18 U.S.C. § 3593(c) the burden of establishing the existence of any aggravating factor is on the Government, and this burden is satisfied only if the existence of such factor is established beyond a reasonable doubt, and though the burden of establishing the existence of any mitigating factor is on the defendant, this burden is satisfied if the existence of such factor is established by a preponderance of the information.

The government is bound at this stage to consider any mitigating evidence "in the light most favorable to the defendant." DOJ Manual, § 9-10.000(G). If the mitigation is taken in that light, the aggravating factors fall short of "sufficiently outweigh[ing]" the mitigation evidence to justify a sentence of death.

### (A)   Impaired capacity and Disturbance

Under 18 U.S.C. § 3592(a)(1), the jury must consider whether the defendant's

5

capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was significantly impaired, regardless of whether the capacity was so impaired as to constitute a defense to the charge. They must also consider whether the defendant committed the instant offense under severe mental or emotional disturbance.

To date, we have been unable to assess this possible mitigating factor by conducting psychological testing.

**(B)     Non-statutory mitigating factors, 18 U.S.C. § 3592(a)(8)**

Under 18 U.S.C. § 3592(a)(8), the jury must consider any other factors in the defendant's background, record, or character or any other circumstance of the offense that mitigates against imposition of a death sentence.

The evidence that should weigh most heavily against seeking the death penalty is the cooperation and remorse shown by the Defendant. It has long been accepted in western culture and law that timely admissions of guilt and acceptance of responsibility are important factors for consideration when deciding what punishment should be imposed upon a defendant. This was acknowledged in United States v. Perez, 858 F.2d. 1272 (1988) where the Court said that two (2) of the many factors that favor relative leniency in sentencing are acknowledgement of guilt and expressions of remorse. Further, Mr. Brown has offered to plead guilty as soon as possible so as to not unnecessarily prolong litigation and consume scarce judicial resources.

The personal circumstances that should count most heavily against the death penalty is Mr. Brown's family and their mutual love for each other. His mother was a hard-working woman who struggled for years to put food on the table for her family. In past years she left the home before sunrise to go to work serving food in a restaurant. Despite her medical problems and past difficulties, Sadie Brown is a church-going, law-abiding, articulate, and caring mother. Her love for her son, and her conviction that God still has some purpose for him for the rest of his life, mitigate strongly against seeking the death penalty against him. The views of the rest of his family, and friends and acquaintances will similarly weigh heavily in his favor. They have a strong belief that Mr. Brown can rehabilitate himself while being punished severely by spending the rest of his life in prison. Mr. Brown's cooperation, remorse and loving family demonstrate the correctness of his family's view that redemption for him is a real possibility.

The Supreme Court has, acknowledged that the circumstances of a defendant's upbringing may mitigate against the death penalty. Hitchcock v. Duggard, 481 U.S. 393 (1987). Mr. Brown's turbulent childhood and family history mitigate against death as an appropriate penalty.

Finally, Mr. Brown has exhibited good behavior in the State Prison system and most recently during his incarceration at the Chatham County Detention Center where he has been held since his arrest. A defendant's disposition to make a well-behaved and peaceful

adjustment to prison life is an aspect of the defendant's character that is relevant in the consideration of whether the death penalty is an appropriate penalty. Skipper v. South Carolina, 476 U.S. 1 (1986).

## 6. AUTHORIZATION OF A CAPITAL PROSECUTION IN THIS CASE WOULD BE ARBITRARY IN LIGHT OF OTHER SIMILAR CASES WHERE THE DEATH PENALTY WAS NOT SOUGHT

The death penalty was not sought in United States v. Christopher Green (D. CR No. CR-95-224) (robbery of a post office and killing of four); or United States v. Garfield J. Patterson, (D. CT H-95-1) (murder of postal carrier). Accordingly, authorization of a death penalty prosecution under these circumstances would raise equal protection and due process concerns.

More significantly, however, many of the federal death penalty cases in which the defendants received life imprisonment, as a result of a jury's decision, a guilty plea, or the Government's withdrawal of its notice of intent to seek the death penalty, involved circumstances that are much more aggravated than the circumstances of the killing involved in this case. Some of these cases are outlined below:

Gang members who engaged in murder and torture. Gang killed at least 14 people including at least two (2) innocent bystanders, one (1) of whom was a pregnant woman. United States v. Padilla, et al., (S.D.N.Y).

Cocaine distribution in Detroit which killed 10, including a 10 year old innocent bystander. Two (2) defendants killed 5 persons. United States v. Andre Carter, Edwin Culp, et. al., (E.D. MI CR No. 92-81058)

Second Oklahoma City bombing defendant who was not present at bombing resulting in death of approximately 162 innocent persons including children. United States v. Terry Lynn Nichols, (D. CO. No. 96-CR-68-M)

Killing of 4. United States v. Ronaldo Tynell Lightfoot and Danny Hickman, (E.D. VA CR No. 3:98CR150)

Eight murders by drug "hitman", United States v. Wayne Anthony Perry, (D.C.D.C. No. 92-CR-474).

Thirty drug-related murders, United States v. Reginald Brown, et al., (E.D.Mich. Cr. No. 92-81127).

Racially-motivated killing spree, United States v. El Trevino, Ricky Rivera Mungia and Roy Ray Martin, (N.D. Tex. No. 5-95-CR-0017-C) (Lubbock Division).

Well-planned double homicide, United States v. Steven Vest, James Vest & Mark

7

Vest, (W.D. Mo. No. 94-00037-01-04/07-17/19-23/25-CR-W-3).

Thus, the facts of the instant prosecution fall short of those for which the ultimate punishment should be sought.

### 7.    MORE CULPABLE KILLERS HAVE NOT FACED THE DEATH PENALTY IN THIS DISTRICT

In this district, the death penalty has not been sought for more culpable killers. See United States v. Ricky Jivens, et. al., (S.D. Ga. 1991) (a notorious crack cocaine conspiracy involving multiple defendants who had up to ten murder attributed to either Jivens or his gang members). Jivens and his gang members were prosecuted before 1994 but could have been charged as capital defendants under the 1988 "Drug Kingpin" death penalty statute.

### 8.    THE HANDFUL OF KILLERS SELECTED FOR EXECUTION UNDER FEDERAL JURISDICTION ARE FAR MORE CULPABLE AND DANGEROUS THAN THIS DEFENDANT

An examination of federal death row inmates demonstrates that the federal death penalty is largely reserved for terrorists,[1] multiple murderers,[2] leaders of large scale and dangerous criminal organizations,[3] and sex criminals who abduct and rape before they

---

[1] See United States v. Timothy McVeigh, 153 F. 3d 1166 (10th Cir. 1998), cert. denied, 119 S.Ct. 1148 (1999).

[2] See United States v. Thomas Pitera, (E.D. NY CR No. 90-0242(RR)(Pitera, a Mafia contract killer, personally committed seven of the nine murders charged in the indictment dismembering some of his victim's bodies, but was spared the death penalty. United States v. Pitera, 795F.Supp. 546, 547 (E.D.N.Y. 1992).

[3] See United States v. Richard Tipton, (E.D.Va. CR No. 3-92-CR 68)(partners in a crack cocaine conspiracy for the roles in the murder of eleven competitors or persons who offended a partner); United States v. Len Davis and Paul Hardy, (E.D. La. CR No. 94-381)(a police officer under investigation in a drug conspiracy case who ordered his co-defendant to murder a 32 year old mother of three because she witnessed his beating of a witness in an unrelated incident; both the killer and the police officer received the death penalty); United States v. Juan R. Garza, (S.D. TX. CR. No. CR -93-0009)(drug trafficker executed or ordered execution of three other drug traffickers who were suspected informants; at penalty phase there was proof of four additional drug murders. Garza built and controlled an intricate drug trafficking enterprise and personally killed some of the seven victims and ordered the death of the rest; United States v. Garza, 63 F.3d 1342, 1351(5th Cir. 1995), cert denied, 115 U.S. 825 (1996); United States v. Darryl Alamont Johnson, (N.D. Ill. No. 96 CR 379)(a "Gangster Disciple" who ordered two homicides, one of a government informant; three other homicides were alleged in aggravation); and United States v. Richard Stitt, (E.D. VA 2:98 CR 47)(three drug-related homicides committed by co-defendants at Stitt's direction. Four co-defendants did not face the death penalty. One of the shooters pled guilty to a life sentence).

8

kill[4] and others who did not cooperate and express true remorse as Mr. Brown has[5]. Mr. Brown and his crime do not comfortably fit into this category of criminals and crimes.

### 9.    ACCEPTANCE OF THE PROPOSED PLEA AGREEMENT SUBJECT MR. BROWN TO LIFE IMPRISONMENT

Under the Sentencing Guidelines, any murder carries with it a base offense level of 43, yielding a sentencing range limited to life imprisonment. Mr. Brown has signed a written plea agreement, which would subject him to a sentence of life without possibility of parole.

### CONCLUSION

We hope these comments will be of assistance in your evaluation of whether to seek the death penalty in this case and whether to accept the proposed plea agreement. We believe that Mr. Brown's cooperation and acceptance of responsibility along with aspects of his background mitigate against seeking the death penalty. Comparison of this case with numerous others in which the government has found life without parole to be an adequate penalty shows that life without parole would be appropriate in this case as well. Therefore, we respectfully request that the Attorney General authorize the government to accept the proposed plea agreement for life without parole in this case.

---

[4] See United States v. Orlando C. Hall and Bruce Webster, (N.D. TX CR No. 4:94-CR-121-Y)(the abduction, sexual assault and murder of a 16 year old female whose older brother had allegedly stolen marijuana; expert testimony suggested that victim was buried alive); United States v. Louis Jones, (N.D. TX CR NO. 6-95 CR 0015-C)(San Angelo Division)(the abduction, sexual assault and heinous murder of a young female soldier).

[5] See United States v. Battle (W.D. GA CR No. 1:95 CR 528) a convicted murderer who hammer murdered a federal penitentiary guard. The jury heard Battle testify at the penalty phase that the victim deserved to die.

Respectfully submitted,

DONALSON & BELL
An Association of Professional Corporations

BY:_____
        William G. Bell III
        Georgia Bar No. 049625

420 West Broughton Street
Savannah, GA 31401
(912) 233-8000


DARDEN, BURNS & BURNS, LLP

BY:_____
        Richard Darden
        Georgia Bar No: 205450

219 West York Street
Savannah, GA 31401
(912) 231-1000

10

<table>
<tr><td>5K1.1/Rule 35(b)</td><td></td></tr>
<tr><td>Appeal Waiver</td><td></td></tr>
<tr><td>Mandatory Minimum</td><td>X</td></tr>
<tr><td>Other</td><td></td></tr>
<tr><td>DOJ Approval</td><td>X</td></tr>
</table>

UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 403-01 |
| | ) | |
| MEIER JASON BROWN | ) | |

## SUMMARY OF (CONDITIONAL) PLEA AGREEMENT

*This summary of the plea agreement is a part of the agreement,
which follows in full hereafter.*

### COUNSEL FOR THE PARTIES:

DEFENSE COUNSEL:    WILLIAM G. BELL, ESQ.
RICHARD A. DARDEN, ESQ.

ASSISTANT U.S. ATTORNEYS:    WILLIAM FRENTZEN
JOSEPH D. NEWMAN

### COUNTS AND STATUTES CHARGED:

COUNT 1    18 U.S.C. § 1111
MURDER

COUNT 2:    18 U.S.C. § 1114
MURDER

COUNT 3:    18 U.S.C. § 2114
ROBBERY

MB

## COUNTS AND STATUTES PLEADING TO:

COUNT 1                              18 U.S.C. § 1111
                                     MURDER

COUNT 2:                             18 U.S.C. § 1114
                                     MURDER

COUNT 3:                             18 U.S.C. § 2114
                                     ROBBERY

## STATUTORY MAXIMUM PENALTIES:

### 18 U.S.C. § 1111

Death or imprisonment for life, a $250,000 fine, and up to five (5) years of supervised release, plus a $100.00 assessment.

### 18 U.S.C. § 1114

Death or imprisonment for life, a $250,000 fine, and up to five (5) years of supervised release, plus a $100.00 assessment.

### 18 U.S.C. § 2114

Imprisonment not more than 25 years, a $250,000 fine, and up to five (5) years of supervised release, plus a $100.00 assessment.

## ELEMENTS OF THE OFFENSE

### 18 U.S.C. 1111 (*Murder within federal Jurisdiction*)

First:      That the victim named in the indictment is dead;

Second:     That the Defendant caused the death of the victim with "malice aforethought," as charged;

Third:      That the Defendant did so while during the knowing and willful perpetration or attempted perpetration of a robbery; and

2

Fourth:    That the killing occurred within the territorial jurisdiction of the United States.

**18 U.S.C. 1114**    *(Murder of Federal Employee)*

First:    That the victim named in the indictment is dead;

Second:    That the victim was an employee of the United States and of the United States Postal Service;

Third:    That the victim was engaged in the performance of her official duties; and

Fourth:    That the Defendant killed the victim during a knowing and wilful perpetration or attempted perpetration of a robbery of the United States Postal Service.

**18 U.S.C. 2114**    *(Robbery of Federal Property)*

First:    That the Defendant intentionally took from the person or the presence of the person described in the indictment, money and property of the United States;

Second    That the Defendant assaulted and put in jeopardy the life of some person by the use of a dangerous weapon or device while engaged in taking the property or money, as charged; and

Third:    That the defendant did such acts intentionally.

3

## SUMMARY OF GOVERNMENT'S PROMISES:

- Will submit this agreement to the Department of Justice and Attorney General for review and approval of its terms, including that the government waive intent to seek death sentence in light of plea agreement and defendant's agreement to enter guilty pleas.

- Represents that a life sentence is the appropriate sentence on Counts One and Two.

- Retains the right to inform the Court of all matters concerning the defendant and the offenses.

## SUMMARY OF DEFENDANT'S PROMISES:

- Will plead guilty to Counts One through Three following approval from Department of Justice for waiver of death sentence.

- Acknowledges that a life sentence on Counts One and Two is the appropriate sentence.

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

UNITED STATES OF AMERICA   )
                           )
            v.             )        CR 403-01
                           )
MEIER JASON BROWN          )

## (CONDITIONAL) PLEA AGREEMENT

William Frentzen and Joseph D. Newman, Assistant United States Attorneys, and William G. Bell and Richard A. Darden, attorneys for Defendant Meier Jason Brown, pursuant to Federal Rules of Criminal Procedure 11, as amended, have, with the authorization of the undersigned defendant, heretofore entered into discussions with a view towards reaching a pretrial conclusion of the charges pending in the above-styled action and a plea agreement has been reached by said parties in the following respects:

**1.   OBLIGATIONS OF THE GOVERNMENT**

In exchange for the defendant's entry of pleas of guilty to the offenses charged in Counts One through Three of the Indictment, his full compliance with all promises made hereinafter as part of this agreement, and his adherence to all representations and understandings recited hereinafter, the United States Attorney's Office for the Southern District of Georgia:

A.   Will submit this agreement to the Department of Justice and the Attorney General of the United States for review and approval of its terms, including



the proposal that the government waive seeking a death sentence in light of this plea agreement and Defendant's agreement to enter guilty pleas. The Defendant understands that the United States Attorney's Office for the Southern District of Georgia cannot bind the Department of Justice's ultimate decision regarding whether to seek the death penalty in this case and that, if the Department of Justice authorizes seeking a death sentence and rejects the plea agreement, this agreement would become a nullity.

B.   Following any approval of this agreement by the Attorney General, would represent that a life sentence is the appropriate sentence on Counts 1 and 2.

C.   Retains the right to inform the Court of all matters concerning the defendant and the offenses.

## 2.   OBLIGATIONS OF THE DEFENDANT

A.   The Defendant is required to plead guilty to Counts One through Three of the Indictment and to pay any special assessments, fines, and restitution as provided by law and ordered by the Court. If, however, the Department of Justice and Attorney General authorize seeking a death sentence and do not waive seeking such a sentence in light of the plea agreement, then this agreement would become a nullity and Defendant would not be required to enter guilty pleas.

B.   The defendant is required to pay any special assessments imposed pursuant to 18 U.S.C. § 3013 by the Court at sentencing must be paid on the date of

2

sentencing. The defendant agrees that if a fine and/or restitution is imposed by the Court, the defendant shall meet with a member of the Debt Collection Unit of the United States Attorney's Office and complete a written personal financial statement setting forth the defendant's assets and liabilities as of the date of the offense. The defendant understands that, by completing the financial statement, the defendant is representing that it is true and accurate to the best of the defendant's information, knowledge, and belief.

C.    **SPECIAL PROVISION**

THE DEFENDANT ACKNOWLEDGES AND UNDERSTANDS:

That this agreement is contingent upon the United States Attorney's Office obtaining the Attorney General's approval of the agreement. That the United States Attorney's Office is required to submit a DEATH PENALTY MEMORANDUM to the Department of Justice, and that the decision whether to seek a death sentence rests exclusively with the Attorney General of the United States. Should the Attorney General decide to reject the plea offer and seek a death sentence, then this agreement would be null and void.

3.    **DEFENDANT'S FACTUAL REPRESENTATIONS TO THE COURT**

A.    The defendant understands that the Indictment charges that he committed certain offenses against the United States and that his pleas of guilty will constitute proof as to the counts covered hereunder. The defendant agrees to the truthfulness and accuracy of the following facts which relate to Counts One through Three of the Indictment:

**COUNT ONE (18 U.S.C. § 1111, Murder within Federal Jurisdiction)**

3

On or about November 30, 2002, in Liberty County, within the Southern District of Georgia, in the United States Post Office, Fleming, Georgia, a place within the special territorial jurisdiction of the United States, the defendant Meier Jason Brown with malice aforethought, did unlawfully kill Sallie Louise Gaglia by stabbing, in the knowing and willful perpetration of a robbery of said Post Office, all done in violation of Title 18, United States Code, Sections 7(3) and 1111 (a) and (b).

## COUNT TWO (18 U.S.C. § 1114, Murder of Federal Employee)

On or about November 30, 2002, in Liberty County, within the Southern District of Georgia, the defendant Meier Jason Brown with malice aforethought, did unlawfully kill Sallie Louise Gaglia, United States Postal Service Postmaster Relief, an employee of the United States and of the United States Postal Service, while she was engaged in the performance of her official duties, by stabbing, in the knowing and willful perpetration of a robbery of the United States Post Office, Fleming, Georgia, all done in violation of Title 18, United States Code, Sections 1114 and 1111(a).

## COUNT THREE (18 U.S.C. § 2114, Robbery of Federal Property)

On or about November 30, 2002, in Liberty County, within the Southern District of Georgia, the defendant, Meier Jason Brown, knowingly and willfully, did assault United States Postmaster Relief Sallie Louise Gaglia, a person having lawful charge, custody and control of United States mail matter, money, and other property of the United States, with intent to rob,

4

steal and purloin money and property of the United States, that is, three United States Postal Money Orders in the amounts of $500, $500, and $175, and in effecting such robbery did wound Ms. Sallie Louise Gaglia, and did place in jeopardy the life of Ms. Sallie Louise Gaglia through the use of a dangerous weapon, that is, a knife, all done in violation of Title 18, United States Code, Section 2114(a).

B.   The defendant understands that the Court is not a party to this agreement, that the government can only make recommendations which are not binding on the Court, and that after the entry of the defendant's guilty pleas, the defendant has no absolute right to withdraw the pleas.  Thus, the Court is free to impose any sentence authorized by law up to the statutory maximum sentences: life imprisonment.

C.   The defendant further advises the Court that the defendant understands that the United States Probation Office will prepare a presentence investigation report for the Court and that, in so-doing, the Probation Office will consider all of defendant's conduct related to the offense to which he is pleading as well as the defendant's criminal history, and that these facts will be considered by the Court in determining the defendant's sentence. The defendant understands that the offense level and criminal history category determined by the Probation Office and the Court may differ from that estimated or projected by the defendant's counsel or the United States Attorney.

D.      The defendant advises the Court that the defendant understands that if the relevant conduct, guideline sentencing range, or sentence imposed by the Court is more or greater than the defendant expected or, in the case of relevant conduct, is found to be

5

more extensive than the defendant has admitted to, the defendant will still have no absolute right to withdraw his guilty pleas.

## 5.    DEFENDANT'S FURTHER REPRESENTATIONS TO THE COURT

A.    The defendant represents to the Court that the defendant has had the services of attorneys the defendant believes to be competent; that the defendant has met with said attorneys on a sufficient number of occasions and for a sufficient period of time to discuss the defendant's case and receive advice; that the defendant has been truthful with his attorneys and related all information of which the defendant is aware pertaining to the case; that the defendant and defendant's attorneys have discussed possible defenses, if any, to the charge in the Indictment, including the existence of any exculpatory or favorable evidence or witnesses, discussed the defendant's right to a public trial by jury or by the Court, the right to the assistance of counsel throughout the proceedings, the right to call witnesses in the defendant's behalf and compel their attendance at trial by subpoenas, the right to confront and cross-examine the government's witnesses, the defendant's right to testify in the defendant's own behalf or to remain silent and have no adverse inferences drawn from the defendant's silence; and that the defendant, with the advice of counsel, has weighed the relative benefits of a trial by jury or by the Court versus a plea of guilty pursuant to this agreement, and has entered this agreement as a matter of the defendant's free and voluntary choice and not as a result of pressure or intimidation by any person.

6



B.    The defendant further represents to the Court that the plea agreement as set forth herein and the pleas to be entered by the defendant is the result of prior discussions between the attorneys for the government and the attorneys for the defendant, conducted with the defendant's authorization, knowledge and consent; that this plea agreement contains the entire agreement and understanding between the government and the defendant; and that the defendant has no other agreements, understandings, or deals with any person other than those set out in this plea agreement, that is, the defendant advises the Court that the defendant's entire understanding of this plea agreement is completely set forth in writing in this document.

C.    The defendant represents to the Court that the defendant has been advised of the nature of the charges to which the pleas of guilty is to be offered, of the maximum possible penalty provided by law, as set forth above, and that by entering pleas of guilty the defendant gives up all of the rights set out in paragraph "A" above, gives up any defenses to the charges, and understands that there will not be a further trial of any kind. The defendant further understands that in entering pleas of guilty, the Court will ask questions about the offenses to which the pleas are entered. The defendant understands that the defendant will be under oath and on the record in answering those questions, and that the defendant's answers may later be used against the defendant in a criminal prosecution for perjury or false statement if those answers are not truthful.

7

This _24th_ day of _January_, 2003.

RICHARD S. THOMPSON
UNITED STATES ATTORNEY

William Frentzen
Assistant United States Attorney
Louisiana Bar No. 24421

Joseph D. Newman
Assistant United States Attorney
Chief, Criminal Section
Georgia Bar No. 541150

William G. Bell
Attorney for the Defendant

_1-24-03_
Date

Richard A. Darden
Attorney for the Defendant

_1-24-03_
Date

I have read the foregoing plea agreement, consisting of nine pages, and understand what it says and means. By my signature hereunder, I swear or affirm under penalty of perjury that the matters and facts set forth therein are true and accurately state the representations that have been made to me my by attorneys and government agents and/or prosecutors and accurately set forth the terms of the plea agreement that has been reached by my

8

attorneys on my behalf and with my permission. I hereby freely and voluntarily enter into

this plea agreement.

_____        01-24-03
MEIER JASON BROWN                       Date
Defendant

9