# APPENDIX  B



COUNTY OF CHATHAM

STATE OF GEORGIA

### AFFIDAVIT OF BRUCE LITTLE

Comes now Bruce Little, before the undersigned officer duly licensed to administer oaths, and swears or affirms as follows:

1. My name is Bruce Little and I am over the age of eighteen. The information contained in this affidavit is based on my personal knowledge and I am competent to testify to the matters herein.

2. In 2004, I was selected as a juror in the federal death penalty case against Meier Jason Brown. I was then chosen as the foreman. We deliberated very hard in the guilt phase of the trial and I was particularly effected by the surveillance photos of Mr. Brown and his girlfriend cashing the money orders from the post office. I also recall that some of the jurors were really influenced by the crime scene photos which were very graphic and

1



gory. Ultimately, we decided that the Government had proven its case.

3. After we found Mr. Brown guilty we went on to the penalty phase of the trial. Almost the first thing we heard from the defense was that Mr. Brown had agreed to plead guilty in exchange for a sentence of life without parole. It was our understanding from the stipulation the defense read that Mr. Brown offered to plead guilty only after the case went to the jury and we were deliberating whether he was guilty. A number of us were angered by the fact that Mr. Brown only offered to plead after he had heard the evidence against him.

4. I have been advised that the jurors were mistaken about Mr. Brown offering to plead only after all of the evidence was presented during the guilt proceeding. Representatives of Mr. Brown have informed me that Mr. Brown actually offered to plead guilty well before the trial began. That was never made clear to us and had we known that it would have had a considerable impact on

2



my decision to sentence Mr. Brown to death. This is so because by offering to plead guilty early on, Mr. Brown demonstrated his willingness to accept responsibility for what he had done and would have shown me that he was remorseful for his actions.

5. I thought that we, as the jury in this case, had been given all relevant information. I recall there were no psychiatrists or psychologists who testified for either side. I believed from what we were presented that Mr. Brown was a bad guy and would likely continue to be. I would have been receptive to any other information but none was presented.

6. I have been advised that Mr. Brown was evaluated by doctors at a federal medical center. I am told that the experts at this federal prison administered psychological tests to Mr. Brown and that these tests and experts found that Mr. Brown was not anti-social, was not a psychopath, and was classified as requiring low security measures within a prison system. Had the Government or the defense presented such evidence that Mr. Brown did not fit

3



the profile of a person who would be dangerous in the future, I most likely would have not voted to impose a death sentence.

7. I remember Detective Woodall testifying and I recall he appeared to have a good relationship with Mr. Brown. All Det. Woodall testified to was that he believed Mr. Brown was remorseful for his crime. I would have been impressed and influenced in my decision-making if I had been made more fully aware that Detective Woodall, a seasoned police officer, believed that Mr. Brown did not go into this crime with the intention of killing Ms. Gaglia. I most likely would have voted for a life sentence if I had been aware that Detective Woodall did not believe Mr. Brown should be sentenced to death and the reasons why.

7. During the sentencing deliberations the jurors talked a good deal about what the family of Sally Gaglia would have wanted us to do. There were some of her family who testified about their loss. They never said if they wanted Mr. Brown to be sentenced to death, but they were testifying for the Government at the penalty

4



phase of the trial so we assumed they wanted a death sentence. If we had been told that Ms. Gaglia's husband and other family members had agreed to allow Mr. Brown to plead guilty in exchange for being sentenced to life without parole it would have had a significant impact on my decision on whether to impose a death sentence. I do not think I would have.

8. On top of the fact that we mistakenly believed Mr. Brown only offered to plead guilty during the trial, we were never informed that the Government had agreed to allow him to plead guilty and receive a life sentence. We were under the impression that even though Mr. Brown offered to plead guilty, the Government never thought that life without parole was an appropriate sentence.

We believed that Mr. Brown offered to plead guilty and that the lawyers for the Government rejected the offer because they believed life without parole was not an appropriate sentence. If I had been made aware that the local United States Attorneys who were prosecuting the case had actually signed an agreement allowing Mr.

5



Brown to be sentenced to life without parole if the Attorney General of the United States approved, that would have impacted my decision to impose a death sentence and I likely would not have done so. A large part of my decision to impose a death sentence was based on what we thought was in the minds of the family. I most likely would have voted for life without parole if I had known that the local Government prosecutors and the victim's family believed that life in prison without parole was an adequate sentence.

9.  I have read every part of this affidavit and have initialed each page. Everything in this affidavit is true and correct and I have not been told what to say or how to say it. I voluntarily agreed to meet and speak with Mr. Brown's representatives and I have not been promised anything in exchange for giving this affidavit.

Further affiant sayeth naught.

Dated, this the ___17th___ day of January, 2008.

6

BRUCE LITTLE

Sworn to me this the 17th
day of January, 2008.

NOTARY PUBLIC

My commission expires: Nov 16 2009



7