# APPENDIX X

12/04/2002 16:14  FAX 19128760797          Liberty Co Jail                               ☑04

Iv~~
652-43?8

## AFFIDAVIT FOR SEARCH WARRANT

I, Marla F. McLendon, first being duly sworn, depose and state that I am a United States Postal Inspector assigned to the Savannah, Georgia office of the Southeast Division of the United States Postal Inspection Service. I have been a Postal Inspector for the past nine years. As part of my official duties, I investigate crimes committed against the U.S. Post Service and postal employees during the course of their duties, including armed robbery and homicide, in violation of United States Code, Title 18, Section 1111, Murder; Section 1114, Protection of Officers and Employees of the United States; and Section 2114, Mail, Money or other Property of the United States. This affidavit is made in support of an application for a warrant to search the residence of MR. JASON BROWN, 6724 Leroy Coffer Highway, Fleming, GA 31309. Your affiant deposes the following: *As such, she is...Liberty City.*

1. On November 30, 2002, at about 10:51am, the body of Sallie Louise Gaglia was found inside the US Post Office, Fleming, Ga. Ms. Gaglia was identified as the Postmaster Relief for the Fleming Post Office. Between 10:40 and 10:50am on November 30, 2002, a customer entered the post office and found Ms. Gaglia's body lying on the floor. The witness summoned medical personnel and law enforcement who arrived within minutes and secured the scene. Examination of the crime scene determined that Ms. Gaglia was stabbed with what appears to be a knife or other sharp cutting instrument multiple times over the front and back of her body. Based on a review of the materials at the scene, it appears she was in the process of preparing to close the post office for the day and was processing the day's receipts. Among the transactions found to have been made were the sale of four US Postal Money Orders in the amounts of $500.00, $500.00, $20.00 and $175.00. A check of interior of the facility failed to locate the monies received for the sale of the money orders. A financial review of the Post Office confirmed the sale of the four money orders and also confirmed the funds for the purchase of these money orders was missing from the Post Office. Further check of Ms. Gaglia's pocket book, which was on a chair by the desk determined her wallet containing her license, credit cards, and personal papers were missing. Based on these factors, the motive of the incident *was felt to be* robbery. *One encounter showed* *is believed / gathered*

3. Examination of the interior of the facility resulted in the location of numerous areas of *cast off* blood as well as hand prints and foot prints which were made after coming into contact with the blood of Ms. Gaglia. Due to the extremely violent nature of the attack, the large amounts of blood present and the obvious hand prints and foot prints the blood, it is *strongly believed* that blood from Ms. Gaglia was transferred to the offender during the attack. *believed? Statement by forensic exam.*

4. While conducting interviews with personnel located in the area of the post office, contact was made with a rural route carrier who reported that on the morning of November 30, 2002, an unidentified male was overheard attempting to access a post office box. Based on the conversation overheard by the rural carrier, the male making inquiry to the post office box was apparently not a registered user of the box. The carrier overheard Ms. Gaglia ask the male what his name was and he replied "JASON". The carrier reported the voice seemed to be that of an African American male.

6. Interviews with various witnesses who live in the area of the post office identified two separate witnesses who described seeing an African American male at or near the post office prior to the time frame established as the time of the attack on Ms. Gaglia. One of the witnesses described the African American male as being in his late 20's or early 30's, weighing approximately 180 lbs and bearing facial hair. This witness reported she had seen the male riding a bicycle towards the post office about five minutes before the suspected time of the incident. *having*

8. A second witness described an African American male who was seen on a bicycle near the railroad crossing immediately adjacent to the post office approximately 10 minutes prior to the time frame established as the time of the attack on Ms. Gaglia. This witness described the male almost exactly as

*Location consistent w/ ¶ 6?*

12/04/2002 16:14  FAX 19128760797          Liberty Co Jail                    ☑05

the first witness had.  *How next*

*CS crim. history)/ cocaine*

9.    On December 3, 2002, a confi  ntial source contacted the Liberty County Sheriff Department and reported he had information pertain  g to this incident. The source was subsequently interviewed by Detectives of the Liberty County Sheriff  Department as well as Inspectors for the US Postal Service.  *Rewrote*

10.    The source reported he was a l  long friend of MEIER JASON BROWN and had heard from an  *won't* *ident* unidentified source on Monday night, 1:  02-02, that Jason Brown was involved in the murder at the Fleming Post Office. The CS stated Bro  n, who is related to the Morgan family, was at their residence in *source* Liberty County, Georgia, on Saturday m  ming, 11-30-02, trying to obtain some money. He was refused and overheard stating, "I will go and ge  some." The CS further related Brown returned to the Morgan residence on a bicycle, appeared very n  vous and used a telephone to call for a ride from his girlfriend who lives off of Quacco Road, Savanna  Georgia. The CS related he believed Brown went over the counter in the Post Office and possibly  rprised the lady coming from the restroom and had to kill her because she knew him. The CS stated  e believes Brown threw the knife into the wooded area while riding the bicycle from the Fleming Post  Office south on Fleming Loop Road back to the Morgan residence. The CS also related Brown p  esently does have some facial hair. The CS also believes Brown may have changed clothes at the Morga  residence on Saturday, 11-30-02.  *ID as Mom's residence? Yes, later.*

Further coordination with local law enfc  ement determined that through various previous contacts with the various occupants of 6724 Leroy C  fer Highway, Fleming, GA, one of the persons who stays at this residence was identified as MEIER JAS(  BROWN. This residence and two other residences co-located at this location are collectively known t  local Law Enforcement as "The Morgan Residences". Incident reports concerning prior arrests of Meie  Jason Brown by the LCSD confirm Brown is a black male, 5'7", 140 lbs. and 32 years of age.

On December 3, 2002, an anonymous (  II to the CrimeStoppers tip line indicated Jason Brown was responsible for the murder at the Flemir  Post Office. The caller stated Brown is also known as "Mara"  *on the bike?*

On December 3, 2002, an additiona  witness stated he saw an African American male on a bicycle wearing white gloves in front of the Fle  ing Post Office on November 30, 2002 at approximately 10:30 – 10:45am. This witness was shown a  hoto spread consisting of eight individuals photos and positively identified Meier Jason Brown  s the individual he witnessed in front of the Post Office on November 30, 2002.  *Other individuals a B/M in P.O. ....*

On December 3, 2002, at 7:15pm, Det  tive Marty Adams, LCSD, received a telephone call from an individual who identified himself as Jas  Brown. Brown stated his mother, Sadie Brown, advised him that detectives were looking for him in  nnection with the murder at the Fleming Post Office. Brown declined to be interviewed by Detective  dams and stated he was enroute to South Carolina at the time of the call. The Sheriff's Department d  olay showed Brown's telephone number as 912-308-8463.

On December 3, 2002, Chief Deputy K  h Moran, LCSD, telephoned the above number and spoke with Brown. Brown stated he was in the Fle  ing Post Office on November 30, 2002 sometime after 8:00am. The telephone line then went dead.

On December 3, 2002, Chief Deputy M  an again telephoned the above number, which was answered by a female who identified herself as Ms. I  own. Ms. Brown confirmed Jason Brown used her cell phone to telephone detectives earlier. She also s  ited she had just dropped him off at a friend's residence near Richmond Hill, GA.

On December 4, 2002, subpoenaed tel  hone records for 912-308-8463 indicate this number received an incoming, four-minute call at 10:57a  on November 30, 2002. An outgoing telephone call from this number was placed at 11:25am on Nov  nber 30, 2002 to telephone number 912-884-4346.

12/04/2002 16:14  FAX 19128760797              Liberty Co Jail                    ☑06

*(and time residence @ residence)*

Subpoenaed telephone records for this number confirm it belongs to Sadie Brown, Jason Brown's mother. Sadie Brown resides at 6724 Leroy Coler Highway, Fleming, GA.

10.   Based on investigation to date *at* it is believed that the persons who stabbed and killed Ms. Gaglia had blood, fibers, and trace evidence transferred to their person, clothing and shoes. This suspicion is strengthened by the presence of a large amount of blood located in the crime scene and the presence of blood transfers to the surrounding furniture. Since a post office employee witnessed some type verbal exchange between the victim and an unidentified black male named "JASON", and because Meier Jason Brown was identified by a witness as being in the area of the post office at the time of the attack, it is suspected that this person is involved in the subsequent stabbing of Ms. Gaglia.

11.   Since no clothing, shoes, or knife was found at the scene, it is believed that these items would have been removed by the suspect when he left the post office. Therefore, it is felt that the clothing and other items as well as the money orders or other documents, papers, and belongings of Ms. Gaglia may be located in the residence or hidden somewhere on the property of the residence. For these reasons, affiant feels there is ~~sufficient reasons to~~ *probable cause* believe that evidence which will link MEIER JASON BROWN to the stabbing of Ms. Gaglia will be found inside the property described in this affidavit. *that*

12.   During my investigation into this matter, I have coordinated closely with members of the Liberty County Sheriff Department, Hinesville. They have reported ~~to me~~ during the past several years, they have had many occasions ~~to meet with~~ and interview various occupants of the residence described in this affidavit. It is the collective opinions ~~of~~ these local law enforcement officers that on nearly every instance there was excessive amounts of ~~alcohol~~ or illegal substances in use by persons residing or visiting the residence. On many of these occasions, the purpose of the visits by law enforcement were for crimes of violence in which weapons were often used to inflict serious harm ~~to other~~ persons at or in the residences. ~~On almost every occasion,~~ persons in the residences routinely flee ~~at the~~ site of arriving law enforcement officers.

13.   As an officer having been in law enforcement for over nine (9) years, I have ~~had~~ occasion to work many credit card and identity theft type ~~crimes. I am~~ aware that ~~in many~~ instances the persons involved in these types of crimes will hold onto the various ~~forms of~~ identification and credit cards for future use or to sell to others involved in criminal activity. Since the credit cards and other personal identification of Ms. Gaglia has ~~not been~~ recovered, it is logical to assume the suspects still have *has* possession of the cards.

14.   Based on the information ~~from~~ local law enforcement that persons ~~in the~~ residence herein described routinely pass along proceeds ~~from criminal activity to~~ other occupants or even share the wealth from criminal enterprises, any of the persons present in the residence may have possession of some of the items of evidence sought in this affidavit. Therefore it is requested that judicial authorization be given to detain and search any and all persons present in the residence at the time of execution of any search warrant.

*Probable cause*

15.   Based on the above, affiant ~~is~~ there is ~~sufficient~~ cause to believe that evidence supporting the offense of Murder and Robbery may be found inside the residence described in this affidavit or inside any vehicle located on the premises.

16.   Based on all available information from local law enforcement concerning the persons likely to be at this residence when any search warrant is executed, it is extremely likely that weapons are of various types will be possessed by the persons present. Further, it is my knowledge and belief that when confronted by law enforcement personnel the various persons in the residence will attempt to flee, destroy evidence or cause injury to the officers if their presence is made known at the time of execution of this warrant.

12/04/2002 16:14  FAX 19128760797          Liberty Co Jail                    ☑07

17.   Further, affiant believes there sufficient cause to believe that any announcement of the presence of law enforcement during the execution of a warrant would cause undue danger to the officers and allow the opportunity for the suspe s to flee, to arm themselves, or dispose of evidence. Therefore a NO KNOCK authorization is request d f the execution of this warrant.