# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

| | | |
|---|---|---|
| **MEIER JASON BROWN,** | ) | **CV407-85** |
| | ) | **CR403-1** |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## GOVERNMENT'S RESPONSE TO BROWN'S
## MOTION FOR LEAVE TO CONDUCT DISCOVERY

COMES NOW the United States of America, by and through Edmund A. Booth, Jr., United States Attorney for the Southern District of Georgia, and responds to Meier Jason Brown's motion for leave to conduct discovery. [CV Doc 52] Brown has filed a 28 U.S.C. §2255 motion raising numerous challenges to his trial, convictions, and death sentence, including claims of ineffective assistance of counsel. [See CV Docs 8, 50-51] In his instant motion, Brown seeks leave of Court to conduct collateral discovery of certain records, evidence, and depositions. [Mot-Pgs 4, 10-18] Brown claims that the discovery he requests is "essential to guarantee [him] a full and fair opportunity to amend his §2255 motion as well as to ensure that this Court reviews and resolves his constitutional claims for relief

with the benefit of a fully developed factual record." [Mot-Pg 4] He seeks to conduct discovery to "enable him to fully investigate, develop, and present any and all relevant claims for relief in his initial §2255 motion." [Mot-Pg 10]

The former Fifth Circuit has stated that in a 28 U.S.C. §2255 proceeding, "the trial judge in his discretion may allow the use of those discovery devices applicable to civil and criminal proceedings." United States v, Brown, 574 F.2d 1274, 1282 n.2 (5th Cir. 1978)(cits. omitted);[1] see also Rules Governing Section 2255 Proceedings, Rule 6 (Discovery). Generally, a habeas petitioner is not entitled to use collateral discovery to conduct a fishing expedition to seek out possible errors at trial. See Jackson v. Estelle, 672 F.2d 505, 506 (5th Cir. 1982).

**A. Documents and records pertaining to federal death penalty cases**

Specifically, Brown seeks production of records from the Department of Justice, including reports, memos, and handwritten notes relating to the administration and selection procedures in authorizing the death penalty in federal cases. [Mot-Pg 10] He seeks correspondence (including emails and internal memoranda regarding phone calls and verbal conversations) from the U. S. Attorney's Office regarding the decision to seek the death penalty against Brown.

---

[1] Decisions of the former Fifth Circuit decided by September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206 (11th Cir. 1981).

Id. He seeks the "Death Penalty Prosecution Memorandum" as described in §73 of the Department of Justice Criminal Resource Manual, as well as the "Death Penalty Evaluation Form for Homicides under Title 18" and attached memoranda, and the "Non-decisional Case Identifying Information" form identifying the race and gender of defendants and victims, as described at §§74-77 of that manual. [Mot-Pgs 10-11] Brown seeks captions and case numbers of all potential capital prosecutions submitted to the Department of Justice's Capital Case Review Committee between June 6, 2001, to the present, with descriptions of the offenses charged and ultimate dispositions of the cases, and the race or ethnic background and gender of each defendant and victim. [Mot-Pg 11] Brown seeks production of all "standards, policies, practices, or criteria" used by the Department of Justice to "guard against the influence of racial, political, gender or other arbitrary or invidious factors in the selection of cases and defendants for capital prosecution." [Mot-Pg 11] In addition, for each potential capital prosecution case, Brown seeks the "Death Penalty Prosecution Memorandum," the "Death Penalty Evaluation Form," the "Non-decisional Case Identifying Information" form, and the Presentence Investigation Report. [Mot-Pg 12] Brown seeks correspondence from the Department of Justice to U. S. Attorneys and their staffs between June 6, 2001, and the present regarding federal death penalty policies, procedures, and

selection criteria, or identifying cases to be considered for federal capital prosecution, as well as policies or practice manuals used by the U. S. Attorney in the Southern District of Georgia regarding the factors used to determine whether defendants will be charged under Georgia or federal law, and whether or when to seek the death penalty.  [Mot-Pg 12]  Brown seeks a list of all death-penalty eligible indictments in the Southern District of Georgia since June 6, 2001, the race and gender of each defendant and victim(s), and the ultimate disposition of each case.  [Mot-Pg 13]  Brown seeks a list of all non-negligent homicide cases in the Southern District known to the Justice Department in which one or more defendants was arrested and charged by state or federal law enforcement authorities, including all those in which the facts would have rendered the offenders eligible for the federal death penalty.  [Mot-Pg 13]  Although Brown does not specify for what purpose he seeks production of these documents and records, the government presumes that he is claiming that he was the victim of selective prosecution.

The government initially responds that the murder of Relief Postmistress Sallie Louise Gaglia was unique in this respect:  At least since 1978, no other federal employee has been murdered in the Southern District of Georgia while in the performance of his or her official duties.  Furthermore, Ms. Gaglia was

murdered during the commission of an armed robbery of the Fleming. Georgia,

Post Office, which horrific crime occurred on federal property.

The Supreme Court has considered and rejected allowing discovery in

similar selective prosecution claims.  In United States v. Armstrong, 517 U.S. 456,

458,  116 S. Ct. 1480, 1483 (1996), the Court considered the showing necessary

for a defendant to be entitled to discovery on a claim that the prosecutor singled

him out for prosecution based on race.  A selective prosecution claim is "an

independent assertion that the prosecutor has brought the charge for reasons

forbidden by the Constitution."  Id. at 463, 1486.  The standard for selective

prosecution is "a demanding one" because it asks a court "to exercise judicial

power over a 'special province' of the Executive."  Id. at 464, 1486.  The Attorney

General and United States Attorneys have "broad discretion" to enforce federal

criminal laws, although that discretion is subject to constitutional constraints.  Id.

"A defendant may demonstrate that the administration of a criminal law is

'directed so exclusively against a particular class of persons . . . with a mind so

unequal and oppressive' that the system of prosecution amounts to 'a practical

denial' of equal protection of the law."  Id. at 464-65, 1486.  Thus, the claimant

must show that a federal prosecutorial policy had a discriminatory effect and was

motivated by a discriminatory purpose.  Id. at 465, 1487.  "To establish a

discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted." Id.  The Court concluded that the defendant's showing – including an affidavit of an employee of the Federal Public Defender that averred all crack defendants represented by the office were black and a newspaper article  – did not suffice to warrant discovery on defendants' selective prosecution claim.  Id. at 471, 1489.

The Court later applied Armstrong in the death penalty realm.  In United States v. Bass, 536 U.S. 862, 122 S. Ct. 2389 (2002)(per curiam), Bass asserted that the government sought the death penalty against him because of his race. The appellate court determined that Bass had made a credible showing that similarly situated individuals of a different race were not prosecuted based upon Bass' providing nationwide statistics demonstrating that "the United States charges blacks with a death-eligible offense more than twice as often as it charges whites . . . ." Id. at 863, 2389.   The Supreme Court reversed the appellate court, making this finding:

> Even assuming that the Armstrong requirement can be satisfied by a nationwide showing (as opposed to a showing regarding the record of the decision-makers in respondent's case), raw statistics regarding overall charges say nothing about charges brought against *similarly situated defendants*.

Id. at 863-64, 2389 (emphasis in original).

As in <u>Armstrong</u>, the Court found that Bass' showing did not warrant discovery on his selective prosecution claim.  So should this Court find here. Without regard to her race and gender, Ms. Gaglia was the only federal employee killed in the performance of her official duties, a fact which distinguishes her case from the other federal death penalty cases in this District, and probably 99% of the other federal death penalty cases in the nation.

**B.  Records re defense costs**

To support his claim that there is a "direct correlation between the amount of funds provided to the defense effort for indigent defendants charged with capital crimes and whether the death penalty is imposed, i.e., the less money that is provided, the more likely it is that the death penalty will be imposed," Brown seeks a breakdown of the total amount of money provided for the defense in this case, as well as a breakdown of the total amount of money provided for the defense in any murder case in the Southern District since 1996.  [Mot-Pg 13]

This information is contained in records of this Court, not the United States Attorney's Office or Department of Justice.  The government does not in any way concede that movant Brown has a right to this information.  In any event, since 1978, the death penalty was sought in only one other case in the Southern District of Georgia, <u>United States v. Lamond Garrett</u>, CR499-133, which was tried in

2000, resulting in a life sentence.  [See CR499-133 Doc 566 (penalty phase special jury verdict); CR499-133 Doc 602 (judgment)]

Moreover, the amount of compensation paid to Brown's counsel in his criminal case is a matter of public record.  [See CR Docs 278-79, 282, 284-88] The amount of compensation paid to counsel for Lamond Garrett in case number CR499-133 is also a matter of public record.  [See CR499-133 Docs 571-73, 583-86, 610, 613]

## C.  Records re Jury Pool

To support his claim that counsel was ineffective at trial in connection with Brown's claim that the record is devoid of information needed to determine if the prosecution utilized its peremptory strikes in a racially or gender motivated manner in violation of Batson v. Kentucky, Brown requests documents and information from the Clerk of Court.  Brown seeks a list of the name, race, and gender of each juror summoned in his case.  [Mot-Pg 15]

The jurors in this case filled out juror questionnaires containing the information Brown seeks and were individually voir dired.  The parties had access to the questionnaires during jury selection, but were not allowed to copy or keep them; thus, the government does not have copies of them.  The government believes that the questionnaires are available through the Clerk of Court.

**D.  Records from the Bureau of Prisons**

To support his Eighth Amendment challenge to the method of execution in his case (lethal injection), Brown seeks "any and all written procedures and protocols by which execution by lethal injection is to be carried out."  [Mot-Pg 16] In Baze v. Rees, ___U.S.___, 128 S. Ct. 1520, 1538 (2008), the Supreme Court held that the three drug protocol lethal injection procedure utilized by the state of Kentucky and 35 other states, including Georgia, and the federal government in carrying out death sentences did not violate the Eighth Amendment's ban on cruel and unusual punishment.  Baze, 128 S. Ct. at 1538.  This forecloses Brown's challenge in this regard.

Although Brown states that the documents and records he requests are not otherwise available to him [see Mot-Pg 14], the Bureau of Prisons' Execution Protocol Federal Death Sentence Implementation Procedures Effective July 1, 2007, is a matter of public record and may be found in the Appendix to the Brief for the United States as Amicus Curiae in the Baze case, 2007 WL 4351595.  See Baze, 128 S. Ct. at 1527 ("It is also the method used by the Federal Government. See 18 U.S.C. § 3591 et seq. (2000 ed. and Supp. V); App. to Brief for United States as *Amicus Curiae* 1a-6a (lethal injection protocol used by the Federal Bureau of Prisons).").

### E.  Deposition of John Ashcroft

In an effort to support his claim that the federal death penalty is imposed disproportionately on African-American males and upon persons convicted of killing white females, Brown seeks leave of Court to depose John Ashcroft, who was Attorney General at the time of Brown's indictment and prosecution, "to determine the reasons he authorized the death penalty in this case."  [Mot-Pg 17] Brown also seeks the names of the individuals who sat on the Attorney General's capital review board, who heard the presentations by the U. S. Attorney for the Southern District of Georgia and Brown's trial counsel, and made a recommendation to the Deputy Attorney General, who in turn made a recommendation to the Attorney General.  [Mot-Pg 18]  Upon discovery of the identity of these individuals, Brown seeks the Court's permission to depose them. [Id.] Brown's claims again appear to seek discovery of information to support a selective prosecution claim, and as discussed previously, Armstrong and Bass would prohibit discovery based upon Brown's showing.

The government makes two additional points.  First,  Brown appears to impugn the decision of then Attorney General Ashcroft to authorize the death penalty in Brown's case in light of the government's pretrial offer of a conditional plea agreement to resolve this case.  [See Mot-Pg 18]  While the government had

entered into a conditional plea agreement with Brown, his trial counsel was fully aware that the procedural path of capital authorization vested the ultimate decision to authorize the seeking of the death penalty with the Attorney General.

Second, courts have constrained parties from deposing high ranking officials regarding their reasons for taking a particular action while operating in their official capacity. Bogan v. Boston, 489 F.3d 417 (1st Cir. 2007); Simon v. Pronational Ins. Co., 2007 WL 4893478 (S.D.Fla. 2007). The rule's legal reasoning follows the argument that persons holding high positions within the government have greater demands and duties to fulfill than typical witnesses. Bogan, 489 F.3d at 423. If no judicial protection was afforded to high ranking officials, those persons would spend an unreasonable amount of time in discovery proceedings. Id.

In sum, the government respectfully suggests that what petitioner Brown's 2255 counsel is trying to construct is a collateral proceeding of never-ending discovery and litigation, the parameters of which would constantly expand. The object being not to seek truth or justice or a vindication of constitutional rights, but to so burden the path of capital process as to render the penalty so unusual and impossible to carry out.

WHEREFORE, the government respectfully requests that the Court deny

Brown's motion for leave to conduct discovery.

Respectfully submitted this 10th day of July, 2008.

EDMUND A. BOOTH, JR.
UNITED STATES ATTORNEY

BY:   s/ Amy Lee Copeland
       Amy Lee Copeland
       Assistant United States Attorney
       Georgia Bar No. 186730
       United States Attorney's Office
       Post Office Box 8970
       Savannah, GA  31412
       (912) 652-4422

## CERTIFICATE OF SERVICE

This is to certify that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this Court.

This 10th of July, 2008.

EDMUND A. BOOTH, JR.
UNITED STATES ATTORNEY

BY:   s/ Amy Lee Copeland
Amy Lee Copeland
Assistant United States Attorney
Georgia Bar No. 186730
United States Attorney's Office
Post Office Box 8970
Savannah, GA  31412
(912) 652-4422