# APPENDIX A

## DECLARATION OF KEVIN McNALLY
## REGARDING FREQUENCY AND RACE OF DEFENDANT

Kevin McNally hereby declares under penalty of perjury, 28 U.S.C. § 1746, that the following is true and correct:

1. I currently serve as the Director of the Federal Death Penalty Resource Counsel Project. This Project assists court-appointed and defender attorneys charged with the defense of capital cases in the federal courts. I have served as a Resource Counsel since the inception of the Resource Counsel Project (RCP) in January, 1992. The Project is funded and administered under the Criminal Justice Act by the Office of Defender Services of the Administrative Office of the United States Courts. The responsibilities of the RCP include the monitoring of federal capital prosecutions throughout the United States, in order to ensure the delivery of cost-effective and adequate defense services to indigent capital defendants in such cases.[1] This includes the collection of data on the utilization of the federal death penalty, both as to prosecutions brought under the 1988 so-called "Drug Kingpin" death penalty statute, 21 U.S.C. § 848(e) *et seq.,* and those brought pursuant to the "Federal Death Penalty Act of 1994." 18 U.S.C. §3591 *et seq.*

2. In order to carry out my responsibilities, the RCP maintains a comprehensive list of all federal death penalty prosecutions and information regarding each defendant. This information is regularly updated, and is checked for accuracy whenever possible against any available United

---

[1]In May 1998, the role of the Federal Death Penalty Resource Counsel Project was described, at pp. 28-30, in a report prepared by a Judicial Conference Subcommittee on Federal Death Penalty Cases. That report (commonly called the Spencer Committee Report) "urge[d] the judiciary and counsel to maximize the benefits of the Federal Death Penalty Resource Counsel Project . . . which has become essential to the delivery of high quality, cost-effective representation in death penalty cases . . . ." *See,* "Federal Death Penalty Cases: Recommendations Concerning the Cost and Quality of Defense Representation," (May 1998), at p. 50. The Report is available online at http://www.uscourts.gov/dpenalty/. The Report's recommendations were later adopted by the Judicial Conference of the United States.

States government information regarding federal capital prosecutions and/or with defense counsel in those cases. The Project's information regarding practices in federal capital prosecutions has been relied upon by the Administrative Office of the United States Courts, by the Federal Judicial Center and by various federal district courts.

3. I have been asked by counsel for Meier Jason Brown to provide information to the Court regarding certain of the data that the Project has collected. I am prepared to testify as a witness as well. The areas I was asked to provide data concern: (1) the frequency with which the federal death penalty has been sought and imposed since 1988; (2) the race of the defendants as to whom a capital prosecution has been authorized; and (3) the frequency with which the federal death penalty is authorized and imposed on a regional basis.

I.

## FREQUENCY WITH WHICH THE FEDERAL DEATH PENALTY IS SOUGHT AND IMPOSED

4. The Project has collected information regarding all federal executions and all potential and actual federal death penalty prosecutions initiated pursuant to 21 U.S.C. § 848(e) *et seq.*, enacted in 1988, and/or 18 U.S.C. §3591, *et seq.*, enacted in 1994.

5. Based on the Project's figures, as well as the reports published by the Department of Justice in September 2000 and June 2001, it appears that the "pool" of potential capital defendants in the federal system since 1988 totals 2,596. This figure is current as of December 19, 2007. This consists of, among others, 52 cases reviewed prior to the 1995 Death Penalty Protocols put into

place by Attorney General Reno,[2] 682 reviewed by Ms. Reno after the Protocols went into effect (2000 DOJ Study), 637 reviewed by Attorney General Ashcroft (RCP total) and 409 reviewed by Attorney General Gonzales (RCP total). There are also an additional 304 cases identified by United States Attorneys as potential capital cases that were never submitted for review (2001 DOJ Report).[3] The Project has also identified additional cases reviewed by the various Attorney Generals as well as others that were never submitted for review and/or charged as capital offenses even though there was justification for doing so. The total also includes cases reviewed prior to the Clinton administration. The pool of defendants reviewed or to be reviewed is thus 2,543 defendants. Of these, 136 are currently pending review by the Department of Justice, bringing the total defendants reviewed so far to 2,407.

6. From this group of 2,407 potential capital defendants, a total of 435 defendants have actually been authorized for capital prosecution. Thus, the Department of Justice has authorized capital prosecutions in approximately 18% (435/2,407) of the cases in which the penalty could have been sought. To date, juries have sentenced 61 defendants to death. Two death sentences have been

---

[2]Prior to the Protocols, which went into effect on January 27, 1995, the Attorney General reviewed only reviewed those cases in which a United States Attorney requested permission to seek the death penalty. Potentially capital cases where the local determination was not to seek the death penalty were not reviewed by Main Justice. The major 2001 change wrought by the Protocols was a requirement that *all* potential death-penalty cases, whether the United States Attorney wished to pursue the death penalty or not, be submitted to Main Justice for review and ultimate decision by the Attorney General.

[3]*See* the discussion of this figure at n. 10 of the June 2001 Supplemental Justice Department Study.

set aside on appeal. Three defendants have been executed.[4] One defendant was granted clemency. Two defendants are pending retrial. There are 53 defendants presently on the federal death row under an active sentence of death. These cases are in various stages of review via direct appeal or post-conviction proceedings brought pursuant to 28 U.S.C. § 2255. There are 50 defendants presently pending or in trial who have been "authorized" by the Attorney General.

## II.

## RACE OF DEFENDANTS AUTHORIZED FOR FEDERAL CAPITAL PROSECUTIONS

7. The racial composition of the pool of 435 defendants whose cases were authorized for a federal capital prosecution is as follows: (1) African-American, 223 (51%); (2) Caucasian, 115 (27%); (3) Latino, 78 (18%); and (4), "other," 19 (4%). These figures are current as of December 19, 2007.

## III.

## REGIONAL VARIATIONS

8. Based on figures compiled by the Death Penalty Information Center (current as of December 19, 2007) the states which currently lead the nation in post-*Gregg* executions are Texas (405), Virginia (98), Oklahoma (86) and Missouri (66). The states whose federal districts have the most authorized federal death penalty prosecutions (including pending cases) are Virginia (50), New York (42), California (37), Texas (26) and Missouri (26). Federal districts in the following states

---

[4]Two federal executions took place in the year 2001 (Timothy McVeigh and Juan Garza) and one in the year 2003 (Louis Jones). Messrs. McVeigh and Jones were executed pursuant to the Federal Death Penalty Act of 1994. Mr. Garza was executed pursuant to the 1988 enactment, 21 U.S.C. § 848(e).

4

have had more than one federal death sentence returned by juries: Texas (11), Missouri (8), Virginia (6), Georgia (3), Oklahoma (3), Maryland (2), Louisiana (2), Arkansas (2), Illinois (2), Iowa (2), North Carolina (2), South Carolina (2), California (2) and West Virginia (2). Of the 61 federal death sentences imposed by juries since 1988, 41 have come from the traditional "death belt" states. By way of contrast, there have been thirteen federal death-penalty cases tried in New York State involving a total of twenty defendants as follows: seven trials in the Eastern District of New York (Pitera, Dhinsa, Aguilar, Dixon, Wilson, McGriff, as well as James and Mallay), four in the Southern District of New York (Al'Owhali and Mohamed, Quinones and Rodriguez, Williams and Williams as well as Henderson) and two in the Northern District of New York (Diaz and Walker; Matthews, Tucker and McMillian).[5] Only one federal jury sitting in New York State has returned a death verdict (on January 30, 2007). The cases where life sentences were imposed include *United States v. Bin Laden, et al.*, a case where two of the four defendants faced the death penalty for their roles in the simultaneous terrorist bombings of United States embassies in East Africa resulting in hundreds of deaths, thousands of injures, and the destruction of two United States Embassies.

9. I have also been asked by counsel for Meier Jason Brown to provide information on the number of authorized federal death penalty cases, since 1988, by the state in which each such prosecution was brought. According to the Project's records, as of December 19, 2007, the following compilation accurately set forth the particular state in which each of the 435 federal death penalty cases authorized since 1988 was prosecuted:

---

[5]These figures were current as of December 19, 2007.

Alabama (5), Alaska (1), Arizona (6), Arkansas (7), California (37), Colorado (6), Connecticut (3), DC (17), Florida (13), Georgia (8), Hawaii (2), Idaho (1), Illinois (12), Indiana (6), Iowa (4), Kansas (6), Kentucky (4), Louisiana (10), Maryland (22), Massachusetts (4), Michigan (19), Mississippi (3), Missouri (26), New Jersey (3), New Mexico (7), New York (44), North Carolina (8), North Dakota (2), Ohio (5), Oklahoma (5), Pennsylvania (16), Puerto Rico (22), South Carolina (3), Tennessee (13), Texas (26), Vermont (2), Virginia (50), West Virginia (7).

I declare, under penalty of perjury, that the foregoing is true and correct.  Executed on July 21, 2008.

_____
KEVIN McNALLY

x:\Litigation Guides\Race\Declarations\Frequency race affidavit KMC 7-20-08

6