UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

MEIER JASON BROWN

v.                    407CV085
                      403CR001

UNITED STATES OF AMERICA

### ORDER

In *Brown v. U.S.*, 2008 WL 4411173 (S.D.Ga. 9/29/08) (unpublished) (*Brown II*), this Court denied Meier Jason Brown 28 U.S.C. § 2255 relief in a comprehensive opinion that Brown now challenges through his "Motion for New Trial and/or to Alter or Amend Judgment." 407CV085, doc. # 78. The Court construes it (as does Brown, doc. # 78 at 1-2) as an F.R.Civ.P. 59(e) motion for reconsideration.

The Court summarily denies the issues raised on pages 1-18 as mere re-argument and thus not reachable under Rule 59(e).[1] However, Brown's

---

[1] "Reconsideration may be necessary if there is (1) newly discovered evidence, (2) an intervening development or change in controlling law, or (3) the need to correct a clear error or prevent manifest injustice." *Jersawitz v. People TV*, 71 F.Supp.2d 1330, 1344 (N.D. Ga. 1999), cited in *Gibson v. Ford Motor Co.*, 2007 WL 640030 at * 1 (N.D.Ga. 2/26/07) (unpublished).

Otherwise, a reconsideration motion "is not an opportunity for the moving party to instruct the court on how the court could have done it better the first time." *Id.* (quotes, cite and alteration omitted). Nor is it an appropriate vehicle to "present authorities available at the time of the first decision or to reiterate arguments previously made." *Burger King Corp. v. Hinton, Inc.*, 2002 WL 31059465 at * 1 (S.D.Fla. 7/19/02) (unpublished). It is only appropriate where the "Court has patently misunderstood a party, or has made a decision outside of the adversarial issues presented to the Court by the parties, or has made an error not of reasoning, but of apprehension.... Such problems rarely arise and the motion to reconsider should be equally rare." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F.Supp.2d 1366, 1369 (S.D.Fla. 2002) (quotes and cites omitted); *Stewart*

"Dorothy Rentz" issue (doc. # 78 at 18-20) warrants reconsideration. Some background: While on direct appeal, Brown successfully moved the Eleventh Circuit for a remand to this Court to reconstruct the record, based on his belief that there may have been untranscribed *ex parte* hearings on his pretrial expert-witness-funds request. *U.S. v. Brown*, 441 F.3d 1330, 1372-74 (11th Cir. 2006) (*Brown I*). This Court found that no such contacts or hearings had occurred, and thus there were no such transcripts. The circuit court affirmed. *Id.*

But Brown had also complained to the Eleventh Circuit about this:

It appears that a juror who actually sat and rendered a verdict on both guilty [sic] and punishment, Dorothy Rentz, was never questioned as to here [sic] beliefs on the death penalty. If this is true, Mr. Brown's sentence must be reversed. However, if this Court believes further factual development on this issue is in order, Mr. Brown herein requests this Court stay the instant proceedings and remand to the trial court for a determination on whether Ms. Rentz was, in fact, never death qualified.

Doc. # 50, exh. A (Brown's direct appeal brief) at 17 n. 6. *Brown I* bears no mention of this "Rentz" claim, and Brown points to no effort to urge that court to reconsider on the grounds that it overlooked it. *Brown I* thus denied the claim *sub silentio.*

In his post-*Brown I*, § 2255 motion before this Court, defendant re-raised the "Rentz" issue through the lens of a *Wainwright/Witt* claim. As this Court then explained, in death penalty cases potential jurors ("veniremen") are summoned and questioned about their views on, *inter alia,*

---

*v. Hooters of America, Inc.*, 2008 WL 4534030 at * 2 (M.D.Fla. 10/6/08) (unpublished).

the death penalty. That enables counsel for both parties to be better informed when they later exercise their peremptory strikes in sitting the petit jury. This was explained in

> *Witherspoon v. Illinois*, 391 U.S. 510, 522, 88 S.Ct. 1770, 1777, 20 L.Ed.2d 776 (1968), [where] the Supreme Court held that a death sentence "cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." Later, in *Adams v. Texas*, 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980), the Court refined this standard, holding that "a juror may not be challenged for cause based on his views about capital punishment unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." The Court's opinion in *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985), made clear that the *Adams* "substantial impairment" test displaced *Witherspoon* as governing law.

*Hightower v. Schofield*, 365 F.3d 1008, 1036 (11th Cir. 2004), *vacated on other grounds*, 545 U.S. 1124 (2005).

Brown's § 2255 argument thus derived from his right to a properly "*Witherspooned*" venire (*i.e.*, the assemblage of potential jurors screened, per *Witherspoon* and *Witt*, to better inform peremptory strikes used to sit a petit jury). "During the capital proceedings in this case," he argued,

> this Court determined it would conduct all individual sequestered voir dire of jurors['] attitudes toward the death penalty. In that

regard, the Court, with counsel and the defendant present, individually questioned each juror, with the exception of Dorothy Rentz concerning their attitudes about the death penalty. For some inexplicable reason, Ms. Rentz was never individually brought before the Court, counsel, and Petitioner and asked the *Witherspoon/Witt* type questions required by the Eighth Amendment.[2] Trial counsel were ineffective for not ensuring that this juror was qualified as a juror.

Doc. # 8 at 119 (footnote added); *see also* doc. # 51 at 92-93.

In response, the Government conceded that there is no transcript covering Rentz and thus, Brown is entitled to an evidentiary hearing where the Government would present "trial prosecutor's notes made during jury selection reflecting that the Court subjected Rentz to voir dire." Doc. # 54 at 152.

That issue, in turn, tied into Brown's final, "missing record" claim. There Brown argued that part of the record of his case was missing or perhaps never even generated, and the "Rentz" issue was part of it. Brown asserted that, after voir dire,

> the Court and counsel retired to another room outside the presence of the jurors and each side exercised its peremptory strikes. That process was not recorded thereby depriving Petitioner of his right to meaningful appellate review. It also denied appellate courts the opportunity to review challenges under

---

[2] The Government proffers evidence that she was, but an apparent court-reporter error created a gap in the transcript memorializing that fact. Doc. # 82 at 6.

2

*Batson* [*v. Kentucky*, 476 U.S. 79 (1986)].[3]

As noted above, there is nothing in the record to indicate that Dorothy Rentz was questioned about her views on the death penalty. Inquiry was made of the court reporter who indicated that she had reviewed the tapes (presumably audio) and found no such questioning. Assuming *arguendo*, Ms. Rentz was questioned and that colloquy was not recorded, Petitioner was deprived of his right to meaningful appellate review.

Doc. # 8 at 119-120 (footnote added); *see also* 407CV085, doc. # 51 at 93-94.

In denying Brown relief on these claims, this Court noted that, while criminal defendants possess limited constitutional rights to a transcript of the proceedings against them, things change by the time they get to the collateral-proceeding stage of their case, as

---

[3] As this Court concluded in its § 2255-denial Order, doc. # 73 at 24 n. 14, none of this is true. The record shows that the Court *"Witherspooned"* the veniremen in the jury room, on the record and with all counsel present. The proceedings then moved back into the courtroom, where the parties exercised their jury strikes. 403CR001, doc. # 366 (formerly doc. # 291) at 525-34.

The parties are left to exercise their strikes in silence, at counsel's tables, with the bailiff passing a jury list back and forth and each party crosses a juror name off the list. If a *Batson* challenge is made, it must be made before the struck jurors are excused so that the Court can remedy the situation while each struck juror's race is apparent to all parties. If no *Batson* challenge is raised, the struck jurors are released and no record of their race is retained.

Here, *no one* made any *Batson* challenges, though the Government noted that Brown exercised 20 of his 22 strikes against whites. *Id.* at 534; *see also id.* at 527. Therefore, there was nothing for the appellate court to review with respect to a *Batson* claim. The Court thus denied this part of Brown's "missing transcript" claim on the merits. Doc. # 74 at 23 n. 14.

demonstrated by this portion of an encyclopedist's recitation:

"Whether or not side-bar colloquy needs to be reported is not a question that can be raised in a Section 2255 proceeding," *Casados v. U.S.*, C.A.5th, 1966, 354 F.2d 688. A court reporter's alleged errors, "if they existed, might properly have been raised on appeal, but such errors are not the subject of consideration in a § 2255 proceeding." *Holt v. U.S.*, C.A.8th, 1962, 303 F.2d 791, 793. "The failure to keep complete records of the criminal proceedings is not of itself an error that could be raised in a motion to vacate sentence under § 2255." *Marsh v. U.S.*, D.C.Okla.1976, C.A.8th, 1962, 435 F.Supp. 426, 430.

3 WRIGHT & MILLER, FED. PRAC. & PROC. CRIM.3d § 595 (2008); *see also DeLuca v. U.S.* 243 F.Supp.2d 982, 985 (E.D.Mo. 2003) ("Petitioner's Reporter's Act claims are properly dismissed without an evidentiary hearing because a naked violation of 28 U.S.C. § 753(b) cannot be raised in a collateral proceeding under § 2255"); Ann., *prejudicial effect of Federal District Court reporter's omissions in recording judicial proceedings, where such omissions constitute failure to comply with Court Reporter Act, 28 U.S.C.A. sec. 753(b)*, 12 A.L.R.FED. 584 § 6[a] (1972) (collecting cases).

In his Rule 59(e) motion, Brown stresses that, in his § 2255 motion, he

raised three separate allegations relating to the lack of *Witherspoon/Witt* questioning of juror Dorothy Rentz: (1) his Sixth Amendment rights were violated when trial counsel failed to ensure a *Witherspoon/Witt* inquiry was undertaken on Ms. Rentz (Claim IX, ¶22); (2) his Fifth and Eighth Amendment rights were violated when Ms.

Rentz was seated as a juror without determining her opinion on the death penalty; and assuming Ms. Rentz was asked the *Witherspoon/Witt* questions (Claim XVI), (3) his Fifth, Sixth and Eighth Amendment rights to a meaningful appeal were denied by the lack of a complete record, *i.e.*, the transcription of Ms. Rentz's *Witherspoon/Witt* voir dire (XVII).

Doc. # 78 at 18.  His argument now:

> In resolving the second two issues, this Court found the claim to be procedurally defaulted stating that Mr. Brown "was too late [because] these matters should have been raised on direct appeal, and therefore cannot be heard now." Doc. 74 at 24. The finding that Mr. Brown did not raise these issues on direct appeal is clearly erroneous and this Court should vacate its previous order, grant permission to conduct discovery and hold an evidentiary hearing on the matter.

*Id.*

This Court agrees that it clearly erred; Brown did raise the "Rentz" matter on direct appeal.[4]

---

[4] The Court also erred in noting that Brown's current counsel failed to detect the missing "Traci Amick" voir dire testimony. Doc. # 74 at 24. Closer examination of the record shows that there wasn't any. After 40 veniremen were *Witherspoon*-qualified, the Court -- over no one's objection -- decided to qualify only 25 more. 403CR001, doc. # 365 (original doc. # 290) at 346. After potential juror G.W. Green was *Witherspooned*, doc. # 366 (original doc. # 291) at 519-525, the 25th venireman had thus been examined, so Amick and others whose names followed Green's were never examined. *Id.* at 525; *see also* doc. # 365 at 12-18 (original venire list of names). Thus, there would be no reason for Amick to further appear in the record, and no basis for suspecting that any additional transcript is missing on that score. The Court does reaffirm, however, that current counsel (J. L.

But is Brown entitled to any judicial relief anyway?  The Government says that it has proffered a prosecutor's notes showing that Rentz "was in fact the recipient of individual voir dire and therefore *Witherspoon* qualified." Doc. # 82 at 6.  It additionally argues that

> [t]he clerical error of a court reporter should not be allowed, especially on a collateral, postdirect appeal, to vitiate or erase a conviction that had received the closest scrutiny on direct appeal review by the United States Court of Appeals for the Eleventh Circuit, and where certiorari has been denied by the Supreme Court.

*Id.*

The Court agrees.  The Eleventh Circuit implicitly found the matter to be without merit when it denied this claim without comment. That court instructs district courts (when reaching a 28 U.S.C. § 2254 petition) to respect "implicit" or "tacit" *state* court rulings.  *See Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1255 (11th Cir. 2002) (nothing in 28 U.S.C. § 2254(d)(2)'s text "requires the state court adjudication that has resulted in a decision to be accompanied by an opinion that explains the state court's rationale") (citing *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999) ("The focus is on the state court's decision or resolution of the case"); *see also id.* ("we owe deference to the state court's result, even if its reasoning is not expressly stated")); *see also Santellan v. Cockrell*, 271 F.3d 190, 193-94 (5th Cir. 2001) (ultimate ruling of state court entitled to deference even if no explanation for ruling is given); *Blankenship v. Hall*, 542 F.3d 1253, 1271 n. 4 (11th Cir. 2008) (The state court's failure to cite the relevant Supreme Court precedents does

---

Ertel) is "one of the top lawyers in the State." Doc. # 74 at 24.

4

not mean that deference under the Antiterrorism and Effective Death Penalty Act does not apply). Certainly the Eleventh Circuit's implicit ruling here deserves at least that much respect on collateral review.

Accordingly, the Court **GRANTS** defendant Meier Jason Brown's reconsideration motion. Doc. # 78. Upon reconsideration, the Court **AFFIRMS** *Brown v. U.S.*, 2008 WL 4411173 (S.D.Ga. 9/29/08) (unpublished), doc. # 74.

This __4__ day of November, 2008.


B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA